**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------X

EMELIKE NWOSUOCHA,                          :

                Plaintiff,          :

        against                          :          **COMPLAINT**

                                                  :          JURY TRIAL DEMANDED

DONALD MCKINLEY GLOVER, II,
JEFFEREY LAMAR WILLIAMS, LUDWIG
EMIL TOMAS GÖRANSSON, KOBALT
MUSIC PUBLISHING AMERICA, INC. d/b/a/
SONGS OF KOBALT MUSIC PUBLISHING,
RCA RECORDS, SONY MUSIC
ENTERTAINMENT, YOUNG STONER LIFE
PUBLISHING LLC, THEORY
ENTERTAINMENT LLC d/b/a 300
ENTERTAINMENT, ATLANTIC RECORDING
CORPORATION, ROC NATION PUBLISHING
LLC d/b/a SONGS OF ROC NATION, SONGS
OF UNIVERSAL, INC., WARNER MUSIC
GROUP CORP., and WARNER-TAMERLANE
PUBLISHING CORP.

                Defendants.          :

-------------------------------X

Plaintiff Emelike Nwosuocha ("Nwosuocha"), by and through his attorneys, Aidala, Bertuna &

Kamins P.C., for his Complaint against defendants Donald McKinley Glover, II ("Glover"),

Jefferey Lamar Williams ("Williams"), Ludwig Emil Tomas Göransson ("Göransson"), Songs of

Kobalt Music Publishing ("Kobalt Music"), RCA Records ("RCA"), Sony Music Entertainment

("Sony Music"), Young Stoner Life Publishing LLC ("YSL"), Theory Entertainment LLC d/b/a

300 Entertainment ("300"), Atlantic Recording Corporation ("Atlantic"), Warner Music Group

Corp. ("WMG"), Roc Nation Publishing LLC d/b/a Songs of Roc Nation ("Roc Nation"), Songs

of Universal, Inc. ("Universal"), and Warner-Tamerlane Publishing Corp ("Warner-Tamerlane")

(collectively, "Defendants"), alleges, on knowledge as to his own actions, and otherwise on information and belief, as follows:

## PRELIMINARY STATEMENT

1.      Nwosuocha brings this action seeking injunctive and monetary relief for Defendants' infringement via direct and/or indirect copying of Nwosuocha's copyright in Nwosuocha's song entitled "Made in America" (the "Copyrighted Work"), which Nwosuocha registered with the U.S. Copyright Office on May 24, 2017 and owns full copyright in.

2.      The crux of the claims in this action brought pursuant to the to the Copyright Act of 1976, as amended (the "Copyright Act"), 17 U.S.C. §§ 101 *et seq*. is that there are substantial similarities between the Copyrighted Work and the song "This is America," which was released pseudonymously by Defendant Glover under his musical stage name, Childish Gambino. Specifically, the substantial similarities between both songs include, but are not limited to, nearly-identical unique rhythmic, lyrical, and thematic compositional and performance content contained in the chorus – or "hook" – sections that are the centerpieces of both songs.

3.      Defendants are the writers, producers, performers, record labels, publishers, distributors, managers, administrators, and/or distributors of the infringing work "This is America" (the "Infringing Work").

4.      In or about early September, 2016 Nwosuocha wrote and created the Copyrighted Work. Nwosuocha subsequently displayed the Copyrighted Work to the public on September 11, 2016 by uploading it to popular streaming platform Soundcloud, where end users were allowed to listen to the song on the Soundcloud platform as a free stream. Nwosuocha later again publicly displayed the Copyrighted Work by uploading it, accompanied by a music video, to YouTube on or about November 9, 2016, where end users were allowed to listen to the song on the YouTube

platform as a free stream. A screenshot reflecting these initial two public displays of the Copyrighted Work by Nwosuocha is annexed hereto as **EXHIBIT A**.

5.     Subsequent to publicly displaying the Copyrighted Work on Soundcloud and YouTube, Nwosuocha registered his full and exclusive copyright in the Copyrighted Work with the U.S. Copyright Office on May 24, 2017 in advance of the Copyrighted Work's first publication. The Copyrighted Work would be published for the first time as the lead single for his then-unpublished album entitled "Eleven: The Junior Senior Year" (the "Album"), which he also owns full copyright to. The Certificate of Copyright reflecting the foregoing registration is annexed hereto as **EXHIBIT B**. Nwosuocha is the owner of all copyrights in the Copyrighted Work.

6.     Since creating the Copyrighted Work and fixing it to a tangible medium, Nwosuocha has published, distributed, advertised, licensed, performed, publicly displayed, and sold the Copyrighted Work in the United States by, among other means, uploading the Copyrighted Work to all major music streaming platforms, including YouTube, Apple Music, Spotify, Tidal, and Soundcloud, and by selling downloadable digital copies of the Copyrighted Work.

7.     All of the claims asserted herein arise out of and are based on Defendants' copying, reproduction, distribution, public display, performance, sale, licensing, marketing, promotion and/or other exploitation of the Copyrighted Work without Nwosuocha's consent. Nwosuocha sues for copyright infringement under the United States Copyright Act of 1976, as amended (the "Copyright Act"), 17 U.S.C. § 101 *et seq*.

8.     Nwosuocha seeks all remedies afforded to him by the Copyright Act, including preliminary and permanent injunctive relief, Nwosuocha's damages and Defendants' profits from Defendants' infringing conduct, and other monetary relief.

## JURISDICTION AND VENUE

9.     This court has jurisdiction over this copyright infringement action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Copyright Act. Federal Courts have exclusive jurisdiction over such claims pursuant to 28 U.S.C. § 1331.

10.     This court has personal jurisdiction over the enumerated Defendants because they have directed their infringing activities with respect to the Infringing Work to New York residents, and New York residents are able to purchase, download, and stream the Infringing Work and works that are derivative of the Infringing Work.

11.     Defendants have engaged in systematic and continuous business activities, including those relating to the Infringing Works, in New York. As such, the Defendants have engaged in continuing business activities in the instant jurisdiction.

12.     Defendants are, at minimum, constructively aware of their continuous and substantial commercial interactions with New York residents.

13.     Defendant Glover has performed, and he and the other Defendants have authorized, organized, and promoted performances of the Infringing Work in New York.

14.     The Defendants have generated touring and recording revenues from the unauthorized and unlawful exploitation of the infringing work, including receiving substantial revenue from such exploitation in New York. They have advertised the Infringing Works to New York residents.

15.     The Defendants, individually and collectively, have generated substantial revenue from the exploitation of the infringing works in New York.

16.     New York has a considerable interest in adjudicating disputes wherein New York residents are the target of the harm resulting from exploitation of the infringing work

17.     Venue is proper in this district under 28 U.S.C. §§ 1391(b), 1391(c) and 1400(a) because Defendants maintain offices in and are subject to personal jurisdiction in this Judicial District and have committed unlawful acts of infringement in this judicial district, and because a substantial part of the events giving rise to the within claims occurred in this judicial district.

## PARTIES

18.     Nwosuocha is an individual who resides in and is a citizen of Miami-Dade County, Florida. Nwosuocha is a musician, singer, vocalist, songwriter, and producer who disseminates and/or performs his musical works under the pseudonym/stage name "Kidd Wes." Nwosuocha is further engaged in, among other things, conducting the business of publicly performing, distributing, selling, marketing, licensing, promoting, and/or otherwise exploiting his musical works.

19.     Upon information and belief, Defendant Glover resides in Los Angeles County, California. Among other ventures, Defendant Glover is an American singer, songwriter, and rapper who releases music under the stage name Childish Gambino, and who caused the public release of the Infringing Work on May 6th, 2018, and who has since then has caused the Infringing Work to be widely published distributed, performed, licensed, displayed, marketed, promoted, reproduced, copied and/or otherwise exploited. Upon further information and belief, Defendant Glover has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

20.     Upon information and belief, Defendant Kobalt Music is a Delaware corporation in the business, among others, of music publishing, with a principal place of business in New York, New York. Upon further information and belief, Kobalt Music is one of the publishers of the Infringing Work, has been responsible for, among other things, coordinating publishing, administrative, and creative support services with respect to the Infringing Work. Upon further information and belief, Defendant Kobalt Music has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

21.     Upon information and belief, Defendant Sony Music is a major global music company that produces, manufactures, publishes, licenses, distributes, administers, markets, and/or exploits prerecorded music, among other business ventures. Upon further information and belief, Defendant Sony Music is the parent entity that owns Defendant RCA. Upon further information and belief, Defendant Sony Music has assisted in and/or directly facilitated, among other things, the publication, licensing, promotion, reproduction, sale and/or exploitation of the Infringing Work. Upon further information and belief, Defendant Sony Music conducts systematic and continuous business in this district and has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

22.     Upon information and belief, Defendant RCA is an unincorporated division of Sony Music that does regular business in New York and maintains an office in New York. Defendant RCA is the record label entity to which Defendant Glover is signed for the purposes of creating, producing, manufacturing, publishing, licensing, distributing, performing, displaying, marketing, promoting, and/or otherwise exploiting the music he creates, writes and/or performs under his stage name Childish Gambino, including the Infringing Work. Upon information and belief, Defendant RCA has assisted in and/or directly facilitated, among other

things, the publishing, licensing, administration, distribution, dissemination, and/or the exploitation of the Infringing Work, and has caused copies of the Infringing Work to be widely published, distributed, performed, displayed, marketed, promoted, reproduced, copied and/or otherwise exploited to the public. Upon further information and belief, Defendant RCA has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

23.    Upon information and belief, Defendant Williams resides in Fulton County, Georgia. Among other ventures, Defendant Williams is an American singer, songwriter, and rapper who releases music under the stage name Young Thug, who regularly does business in New York, and who is credited as a writer of the Infringing Work and who vocally performs on the Infringing Work. Defendant Williams has caused the Infringing Work to be widely published, distributed, licensed, performed, displayed, marketed, promoted, reproduced, copied and/or otherwise exploited. Upon information and belief, Defendant Williams has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

24.    Upon information and belief, Defendant YSL is a Georgia limited liability company whose principal and sole member is Defendant Williams, and which functions as Defendant Williams' publishing imprint. Upon further information and belief, Defendant YSL has caused the Infringing Work to be widely published, distributed, licensed, performed, displayed, marketed, promoted, reproduced, copied and/or otherwise exploited, and has derived substantial revenues and/or profits therefrom.

25.    Upon information and belief, Defendant 300 is a Delaware limited liability company doing regular business in New York, and with a principal place of business in New York, New York. Upon further information and belief, Defendant 300 is the record label to which Defendant Williams is signed for the purposes of creating, producing, manufacturing,

publishing, licensing, distributing, performing, displaying, marketing, promoting, and/or otherwise exploiting the music he creates, writes and/or performs under his stage name Young Thug, including the Infringing Work, and is the record label that has acted as the distributor for music released and/or published through Defendant YSL's imprint. Upon further information and belief, Defendant 300 has assisted in and/or directly facilitated, among other things, the publishing, licensing, administration, distribution, dissemination, and/or the exploitation of the Infringing Work, and has caused copies of the Infringing Work to be widely published, distributed, performed, displayed, marketed, promoted, reproduced, copied and/or otherwise exploited to the public. Upon further information and belief, Defendant 300 has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

26.     Upon information and belief, Defendant Atlantic is a Delaware corporation with offices in, and doing regular business in, the State of New York. Upon further information and belief, Defendant Atlantic has acted as the distributor of all music distributed by and through Defendant 300, including the Infringing Work. Upon further information and belief, Defendant Atlantic has assisted in and/or directly facilitated, among other things, the publishing, licensing, administration, distribution, dissemination, and/or the exploitation of the Infringing Work, and has caused copies of the Infringing Work to be widely published, distributed, performed, displayed, marketed, promoted, reproduced, copied and/or otherwise exploited to the public. Upon further information and belief, Defendant Atlantic has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

27.     Upon information and belief, Defendant WMG is a major global music corporation organized under the laws of Delaware with its principal offices in New York, New York. Defendant Upon further information and belief, WMG is the parent company Defendant

Atlantic, and Defendant WMG has assisted in and/or directly facilitated, among other things, the publishing, licensing, administration, distribution, dissemination, and/or the exploitation of the Infringing Work, and has caused copies of the Infringing Work to be widely published, distributed, performed, displayed, marketed, promoted, reproduced, copied and/or otherwise exploited to the public. Upon further information and belief, Defendant WMG has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

28.    Upon information and belief, Defendant Göransson resides in Los Angeles County, California. Among other ventures, Defendant Göransson is a music producer who is credited as a writer of the Infringing Work, whose composition and performance of the instrumental track that underlies the Infringing Work is embodied within the Infringing Work, and who does regular business in New York. Upon further information and belief, Defendant Göransson has caused the Infringing Work to be widely published, distributed, licensed, performed, displayed, marketed, promoted, reproduced, copied and/or otherwise exploited. Upon information and belief, Defendant Göransson has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

29.    Upon information and belief, Defendant Roc Nation is a Delaware limited liability company doing regular business in New York, and with a principal place of business in New York, New York. Upon further information and belief, Defendant Roc Nation is the record label to which Defendant Göransson is signed for the purposes of creating, producing, manufacturing, publishing, licensing, distributing, performing, displaying, marketing, promoting, and/or otherwise exploiting the music he creates, writes and/or performs under his given name, including the Infringing Work. Upon further information and belief, Defendant Roc Nation has assisted in and/or directly facilitated, among other things, the publication, reproduction,

licensing, administration, distribution, dissemination, and/or the exploitation of the Infringing Work, and has caused copies of the Infringing Work to be widely published, distributed, performed, displayed, marketed, promoted, reproduced, copied and/or otherwise exploited to the public. Upon further information and belief, Defendant Roc Nation has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

30.     Upon information and belief, Defendant Universal is a corporation organized under the laws of the State of California registered and doing regular business in the State of New York as a foreign business corporation. Upon further information and belief, Defendant Universal has acted as the distributor of music distributed and/or published by and through Defendant Roc Nation that includes the Infringing Work. Upon further information and belief, Defendant Universal has assisted in and/or directly facilitated, among other things, the publishing, licensing, administration, distribution, dissemination, and/or the exploitation of the Infringing Work, and has caused copies of the Infringing Work to be widely published, distributed, performed, displayed, marketed, promoted, reproduced, copied and/or otherwise exploited to the public. Upon further information and belief, Defendant Universal has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

31.     Upon information and belief, Defendant Warner-Tamerlane is a corporation organized under the laws of the State of California registered and doing regular business in the State of New York as a foreign business corporation. Upon further information and belief, Defendant Warner-Tamerlane has acted as the publisher and/or distributor of music published and/or distributed by and through Defendant Roc Nation and Defendant Atlantic, including the Infringing Work. Upon further information and belief, Defendant Warner-Tamerlane has assisted in and/or directly facilitated, among other things, the publishing, licensing, administration,

distribution, dissemination, and/or the exploitation of the Infringing Work, and has caused copies of the Infringing Work to be widely published, distributed, performed, displayed, marketed, promoted, reproduced, copied and/or otherwise exploited to the public. Upon further information and belief, Defendant Warner-Tamerlane has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

## FACTS

### A.    Plaintiff and his Copyrighted Work

32.    Nwosuocha wrote the Copyrighted Work, and thereafter fixed it to a tangible medium by recording his performance of the Copyrighted Work, in or about early September of 2016. Nwosuocha has since then continued to retain ownership of the full and exclusive copyright in the Copyrighted Work, and registered his full ownership of copyright in the Copyrighted work with the U.S. Copyright Office on May 24th, 2017, prior to its publication. Nwosuocha accomplished registering his full copyright ownership in the Copyrighted Work by registering on May 24th, 2017 his full copyright ownership of the entirety of his then-unpublished album entitled "Eleven: The Junior Senior Year" (the "Album"), on which the Copyrighted Work was included.

33.    Subsequent to registering his full copyright to the entirety of the fully-unpublished Album on May 24th, 2017, Nwosuocha made the first publication of the Copyrighted Work as a purchasable lead single to the Album. This initial publication of the Copyrighted Work occurred on or about June 8th, 2017.

34.    As a result of the foregoing, Nwosuocha owns any and all copyright rights in the Copyrighted Work.

35.     The Copyrighted Work is wholly original, and Nwosuocha is the lawful exclusive owner of all rights, title, and interest, including all rights under copyright, in the Copyrighted Work.

36.     Nwosuocha is the owner of valid and subsisting United States Copyright Registration No. SRu 1-301-922 for the Copyrighted Work, issued by the United States Copyright Office on May 24th, 2017. *See* **Ex. B**.

37.     As previously set forth, Nwosuocha has published, distributed, licensed, displayed, sold, performed, promoted, marketed and/or otherwise exploited the Copyrighted Work by, among other means, uploading the Copyrighted Work to all major music streaming platforms, including YouTube, Apple Music, Spotify, Tidal, and Soundcloud, and by selling copies of the Copyrighted Work.

**B.     Defendants' Infringing Conduct**

38.     Defendants Glover, Williams, and Göransson are credited as the writers of the Infringing Work, "This is America," which publicly-accessible records filed by and/or on behalf of the Defendants affirmatively state was created in 2018.

39.     The Infringing Work, which won the 2019 Grammy for Record of the year and has continuously generated massive amounts of revenue, praise, and publicity since its initial public release, is centered on a chorus, or "hook," wherein Defendant Glover recorded his vocal performance of the rapping of the chorus' lyrics while employing a distinct and unique vocal cadence, delivery, rhythm, timing, phrasing, meter and/or pattern – or  a "flow," as the various elements making up a vocal performance are known and referred to in the realm of hip-hop music. The distinctive flow employed in Defendant Glover's recorded performance of the Infringing Work's chorus, which is the musical centerpiece of the Infringing Work and forms the

namesake for the Infringing Work's song title, is unmistakably substantially similar, if not practically identical, to the distinct and unique flow that was employed by Nwosuocha in recording his vocal performance of his rapping of the hook to his Copyrighted Work.

40.     In addition to the substantially similar unique "flow" employed first in the Copyrighted Work and almost two years later in the Infringing Work, the lyrical theme, content, and structure of the identically-performed choruses are also glaringly similar. In the chorus to the Copyrighted Work, as first made available by Nwosuocha on major streaming platforms for widespread public listening as early as September 11th, 2016, Nwosuocha's lyrical refrain is:

> *"Made in America*
> *Flex on the radio*
> *Made me a terrorist*
> *Pessimistic n\*\*\*as*
> *You should just cherish this"*

Similarly, in the later-released Infringing Work, as created in 2018 and released on May 6th, 2018, the hook's central lyrical refrain, which is repeated and reincorporated throughout the song with occasional minor variances in the specific words rapped is:

> "*This is America*
> *Guns in my area*
> *I got the strap*
> *I gotta carry 'em"*
>
> - or -
>
> "*This is America*
> *Don't catch you slippin' now*
> *Don't catch you slippin' now*
> *Look what I'm whippin' now"*

41.     The unmissable substantial similarity of the two flows used in the songs' respective hooks, as augmented by the two hooks' substantially similar structure and lyrical content, is striking to an extent beyond coincidence and is accordingly audible to the average lay

person who listens to both songs. Indeed, a number of end users from the general public who have listened to the Copyrighted Work as uploaded by Nwosuocha to major streaming platforms have left comments on the Copyrighted Work explicitly noting their opinions as members of the disinterested listening general public that the Infringing Work represents a clear infringement of the Copyrighted Work. For example, on major streaming platform SoundCloud, one listener commented on Nwosuocha's posting of the Copyrighted Work for public streaming: "*Gambino ripped this shit off you G.*" Other examples, which appear in the comment section of Nwosuocha's upload of the Copyrighted Work's music video to YouTube for public streaming, include one listener commenting "*Childish gambino gotta give you creds for the flow and everything*" and another listener commenting "*anyone gonna ask Childish Gambino about this song???*" Annexed hereto as **<u>EXHIBIT C</u>** are screenshots containing the relevant portions of the comment sections of Kidd Wes' "Made in America," as uploaded to SoundCloud and YouTube, reflecting the foregoing examples of comments made by the listening public.

42.     Beyond the fact that the striking substantial similarities between the Copyrighted Work and the Infringing Work are manifestly audible to listening lay persons of the general public, the striking substantial similarities are also qualifiable and quantifiable from a scientific perspective. Esteemed University of Miami Musicologist Dr. Brent Swanson ("Dr. Swanson") has undertaken an investigation into the similarities between the Copyrighted Work and the Infringing Work and concluded in his investigation's report as follows:

> "*This report has detailed the thematic, lyrical, visual, rhythmic, and melodic similarities between the music videos 'Made in America'" by Kidd Wes, and 'This is America,' by Childish Gambino. The videos and lyrics share the themes of gun violence, and oppression of African-Americans and People of Color by police, the political establishment, conservative organizations (in particular the NRA and the GOP), White nationalism (Charleston shooting), and racist structures in the U.S. They also use of imagery related to Blackface Minstrelsy (Jim Crow, Coon, and Uncle Tom), and deride stereotypical Black culture in an ironic way to poke fun*

*at and bring attention to the aforementioned racist power structures in the U.S or Whiteness. There are distinct similarities in melodic contour, rhythmic triplet flow in each performance, and the lines 'Made in America' and 'This is America' line-up nearly perfectly in time despite being different tempos. They also both use rhythmic utterances in their performances. **It is authors' opinion that these similarities are likely not coincidences.***"

*See* Dr. Swanson's Report annexed hereto as **<u>EXHIBIT D</u>** at 15. (emphasis added).

43.     In arriving at the above expert conclusion, Dr. Swanson, among other things, conducted an in-depth forensic sonic analysis and comparison of the audio making up the two songs. Based on his analysis and comparison of the two songs' audio using a number of scientific methods of audio analysis, Dr. Swanson determined that the songs' hooks are substantially similar from a scientific qualifiable and quantifiable perspective. *See id.* at 9-15.

44.     When viewed in light of the fact that the Copyrighted Work had been made continuously widely publicly accessible by Nwosuocha significantly before the Infringing Work was created and/or released, the clearly audible (and scientifically-confirmed) substantial similarity between the Copyrighted Work and the Infringing Work cannot be reasonably ascribed to mere coincidence. Indeed, as has been opined by Dr. Swanson and a number of commenting members of the disinterested listening general public, the clear substantial similarity between the works is most reasonably ascribable to Defendants' willful unauthorized infringement of the Copyrighted Work that was widely and continuously publicly accessible, and copyrighted, well before the Infringing Work was ever released to the public.

45.     Despite the foregoing unauthorized copying of the Copyrighted Work in the Infringing Work, on or about May 6th, 2018, the Infringing Work was publicly released for the first time when: (a) Defendant Glover performed it on television while hosting Saturday Night Live; and (b) simultaneously, or soon thereafter, upon information and belief, Defendants Glover, Kobalt Music, Sony Music and RCA, as administrators and/or managers of Defendant

Glover's music, caused a music video (the "Infringing Work Music Video") derivative of and accompanying the Infringing Work to be uploaded to his "Donald Glover" official YouTube channel for public streaming.

46.     The Infringing Work and the derivative Infringing Work Music Video were an instant sensation of historical proportions. In an article published online on May 9th, 2018 Billboard reported that the Infringing Work Music Video had been viewed nearly one million times on the "Donald Glover" YouTube channel within the first hour of its public release, had amassed 12.9 million views within the first twenty-four hours of its initial release, and had reached over 50 million views at the time of reporting (just a few days after the initial release). Nerisha Penrose, "*Childish Gambino's Record-Breaking 'This Is America' Video Hits 50 Million Views in Mere Days*," Billboard, May 9, 2018, https://www.billboard.com/articles/columns/hip-hop/8455253/childish-gambino-breaks-his-youtube-record-this-is-america-video.

47.     As of the date of the within, the Infringing Work Music Video remains uploaded to the Donald Glover YouTube channel for public streaming and has a total view count of approximately 772.4 million views since its upload on May 6th, 2018.

48.     Beyond the unprecedented astronomical number of streams that the Infringing Work and the Infringing Work Music Video garnered instantly after Defendants Glover, Kobalt Music Sony Music, and RCA first publicly released both, the Infringing Work quickly began receiving widespread critical acclaim that often specifically referenced and praised the infringing flow, structure, and/or lyrical content and themes of the Infringing Work's hook. For example, in a glowing song review of the Infringing Work published on May 7th, 2018 by Pitchfork (one of the best-known and most influential music review outlets in the world), contributor Stephen Kearse noted of the sonics of Defendant Glover's vocal performance in the Infringing Work that:

*"'This Is America,' then, is a bit of a reset. Here, [Glover] uses the ambivalent reception of black art to represent the tightrope of being black. Built on the sharp contrast between jolly, syncretic melodies and **menacing trap cadences**, the song presents Childish Gambino as confident and cutting. 'This is America!' **he chants** as the song swings between harmony and discord ... **Glover's voice** bridges the two worlds, dropping to an austere deadpan for his rapping and ascending to a syrupy coo for his singing. 'Don't catch you slippin' up,' Glover warns as he pulls off the balancing act with ease ..."*

Stephen Kearse, "*Childish Gambino - This is America,*" Pitchfork, May 7, 2019, https://pitchfork.com/reviews/tracks/childish-gambino-this-is-america/ (emphasis added).

49.     Similarly, writing for Vulture (one of the world's foremost entertainment news outlets), and echoing Dr. Swanson's descriptions of certain unique lyrical/thematic/vocal elements from the Copyrighted Work that he found were strikingly substantially copied in the Infringing Work, Frank Guan specifically commented on the lyrics, thematic elements, and vocal performances embodied in the Infringing Work:

*"... **with its cash-grabbing, fashion-mongering, gun-waving, drug-slinging rhetoric delivered in a clipped triplet flow**, the song is a trap number in all but name. The incongruousness of Glover, raised middle-class and a NYU graduate, bragging about his Mexican drug supplier and threatening to have you gunned down, is intentional: it's a tribute to the cultural dominance of trap music **and a reflection on the ludicrous social logic** that made the environment from which trap emerges, **the logic where money makes the man, and every black man is a criminal**."*

Frank Guan, "*What It Means When Childish Gambino Says 'This Is America,'*" Vulture, May 8, 2018, https://www.vulture.com/2018/05/what-it-means-when-childish-gambino-says-this-is-america.html (emphasis added).

50.     The Infringing Work reportedly debuted at number one in the Billboard Hot 100 chart after selling 78,000 downloadable copies and garnering 65.3 million U.S. streams within its first week of release, remained number one on the Billboard Hot 100 for two weeks, and remained in the top ten of the Billboard Hot 100 for a total of five weeks.

51.     The immediate sensation of the Infringing Work and the derivative Infringing Work Music Video spanned well beyond the United States in scope and extent. As reported by Billboard in an article published on August 2nd, 2018, many derivative works, or "remixes," of the Infringing Work and/or the Infringing Work Music Video began to be disseminated on a global scale by musicians hailing from countries all over the world in the few months following the initial public release of the Infringing Work and the Infringing Work Music Video. *See* **EXHIBIT E** annexed hereto, Gil Kaufman, "*This Is Earth: Watch 12 Global Remixes of Childish Gambino's 'This Is America'*," Billboard, Aug. 2, 2018, https://www.billboard.com/articles/columns/hip-hop/8468356/this-is-america-global-remixes-childish-gambinos-india-brazil-iraq-india.

52.     In keeping with the prevailing musical custom for "remixes" within the hip-hop music genre (to which both the Copyrighted Work and the Infringing Work belong), the vast majority of these international derivative works remixing the Infringing Work have substantially featured identical copies of the compositional and performance elements embodied in the Infringing Work - including those the Defendants copied from the Copyrighted Work without authorization - except that in many instances the specific words in the Infringing Work's lyrics were swapped out in the remixes for the international remixers own chosen words.

53.     Indeed, in a number of the more well-known examples of these international derivative remix works, the international remixers/rappers who created and disseminated their own remixes of the Infringing Work rapped over substantially the exact backing instrumental (or "beat," in hip-hop parlance) of the Infringing Work, and did so deliberately employing the same distinct and unique cadences, delivery (or deliveries), and/or phrasing(s) of the vocal performance(s) embodied in the original recording of the Infringing Work, including those

distinct and important vocal elements copied without authorization from the Copyrighted Work. The central musical idea underlying these examples of the international derivative remixes was to substantially sonically remake the Infringing Work but to do so rapping lyrics specifically referencing the remixer's own home country instead of America. Each of any such derivative remix of the Infringing Works has thus been, by design, patently referential to and promotional of the Infringing Work, and has also necessarily constituted a widespread international public distribution and/or exploitation of the Infringing Work.

54.     For all intents and purposes, the phenomena of these international derivative remixes, including the attendant major media outlet coverage, has functioned as a massively effective low-budget global advertisement campaign for the Infringing Work and Defendants' various lucrative infringing endeavors with respect to the Infringing Work.

55.     In addition to globally promoting, advertising, and/or otherwise facilitating the Defendants' continuing infringement of the Copyrighted Work, because many of the international derivative remixes, by design, used the same vocal elements wrongfully and unlawfully copied by Defendants from the Copyrighted Work, those international derivative remixes themselves represent infringements of the Copyrighted Work.

56.     Some examples of the infringing international derivative remixes described in the foregoing have garnered significant streams and international fame in their own rights. For instance, Nigerian rapper Falz's infringing derivative remix "This is Nigeria" has been streamed on YouTube approximately 20.1 million times to date, and has been reported on by NPR and CNN, amongst other preeminent global news outlets. In another example, Dubai-based Iraqi rapper I-NZ's infringing derivative remix "THIS IS IRAQ" has been streamed on YouTube approximately 7.9 million times to date, has been reported to have amassed 350 million streams

overall, and has been the subject of reports by Newsweek, amongst other notable major media outlets. As further evidence highlighting the direct benefits Defendants have enjoyed as a direct result of these infringing derivative remixes of their Infringing Work, on the popular major online music streaming/purchase platform BandCamp, "THIS IS IRAQ" is made available by the rapper I-NZ for free streaming and for digital download with an express acknowledgement and disclaimer from I-NZ that "All rights to the musical composition belong to Childish Gambino and the record label GlassNote Records," and additionally includes the name Childish Gambino in the posting's tagline. A screenshot of "THIS IS IRAQ," as uploaded to BandCamp by I-NZ, reflecting the foregoing is annexed hereto as **EXHIBIT F**.

57.     Upon information and belief, none of the Defendants have caused any of the more popular/widely-consumed examples of the international derivative remixes to be removed from YouTube. Upon further information and belief, all of the Defendants have possessed the presumptive ability to cause the aforesaid international derivative remixes to be taken down from YouTube, pursuant to YouTube's DMCA copyright takedown policy, because the Defendants are all either: (a) parties with registered writing and/or publishing interests in and to the Infringing Work; and/or (b) are major parent record corporations, distribution companies, and/or publishing companies who are responsible for the administration and/or management of the Infringing Work and the registered writing and/or publishing interest therein.

58.     As a further testament to the tremendous global scale on which the Infringing Work has been disseminated and exploited, to date the Infringing Work has been reportedly been Certified:

     a.   three-times Platinum in the U.S. (3,000,000 Certified Units/Sales);

     b.   three-times Platinum in Australia (210,000 Certified Units/Sales);

    c.   three-times Platinum in Canada (240,000 Certified Units/Sales);

    d.   Platinum in Poland (20,000 Certified Units/Sales);

    e.   Gold in France (100,000 Certified Units/Sales);

    f.   Gold in New Zealand (15,000 Certified Units/Sales); and

    g.   Gold in the United Kingdom (40,000 Certified Units/Sales).

59.    In addition to garnering massive numbers of streams and/or sales, as well as spawning a swath of infringing derivative international works that furthered the Infringing Work's dissemination and themselves generated significant streams and/or sales, upon information and belief, the Infringing Work has also been exploited by the Defendants via other means, such as via live performance and via audiovisual synchronization licensing.

60.    For example, in a notable instance of audiovisual synchronization licensing of the Infringing Work, the Infringing Work, including its infringing hook, can be heard prominently featured as a musical score appearing in the 2019 film "Guava Island," which was/is distributed by Amazon Prime Video, stars Defendant Glover alongside global pop phenom Rihanna, has been the subject of much widespread publicity and promotion, and remains widely streamable by the public via Amazon Prime's streaming service. Upon information and belief, since the date of its public release in the U.S., "Guava Island" has also been accessible for public streaming in numerous foreign countries including Brazil, Germany, Singapore, France, and Canada, among others. Upon further information and belief, as parties who possess and/or control and/or administrate the registered writing and publishing interests in the Infringing Work, all of the Defendants have reaped significant revenues and profits derived from this international synchronization license.

61.     Though the exact extent to which Defendants Glover, Williams, and/or Göransson have individually and/or jointly publicly participated in live performances of the Infringing Work may not be fully ascertainable by Nwosuocha until discovery in this action is complete, it is presently known that, in 2018 through 2019, Defendant Glover went on the international "This is America Tour." During the tour, which was named/branded after the Infringing Work, upon information and belief as well as publicly-available setlists/recordings, Defendant Glover gave live performances of the Infringing Work approximately thirty to thirty-five separate times at concerts dates spanning the United States and various locations in Canada, Australia, England, and France.

62.     It is not yet known to Nwosuocha precisely how many total concert tickets were sold during the entire span of the This is America Tour, or precisely how much gross revenue was generated from the total sales from the entire span of the tour. Nonetheless, publicly-available concert box office data reported by Billboard, which **does not include** sales/revenue data for the majority of the venues where Defendant Glover performed during the tour, makes presently knowable that the This is America Tour garnered approximately 190,707 total concert ticket sales, resulting in a total gross revenue of $16,286,160.00, from the tour performances that occurred in just twelve out of the thirty total venues that hosted the tour. Because the foregoing astronomical $16,286,160.00 gross revenue figure represents roughly just 40% (12 out of 30 tour venues) of the entire tour, it is reasonable to assume that the tour's total gross revenue, derived in significant part from Defendants' infringing use of the Copyrighted Work in the Infringing Work, far exceeds this figure. Upon further information and belief, as the parties who possess and/or control and/or administrate the writing and publishing interests in the Infringing Work, all of the Defendants have reaped significant revenues and profits derived from the tour.

63.     Upon information and belief, the Infringing Work was also merchandised in tour merchandise sold during the tour, and Defendants have derived revenue from this merchandising.

64.     Upon information and belief, the Infringing Work has also been performed live outside the context of the This is America Tour, including, but not necessarily limited to, at the 2018 BET Awards.

65.     Upon information and belief, Defendants Kobalt Music, RCA, Sony Music, YSL, 300, Atlantic, WMG, Roc Nation, Universal, and Warner-Tamerlane (collectively, the "Label Defendants") have individually and jointly been responsible for the continuing administration, display, reproduction, distribution, performance, sale, marketing, promotion, and/or other exploitation of the Infringing Work. Upon further information and belief, the Label Defendants' joint and individual infringing conduct in this regard extends to conduct that continues to infringe upon Nwosuocha's full ownership of the copyright to the Copyrighted Material, including, but not limited to, the various examples infringing conduct described above. For instance, as just one example of Defendant RCA's, and its parent company Defendant Sony Music's, role in carrying out and furthering the continuing infringement of Nwosuocha's Copyrighted Work is a press release dated May 6th, 2018 posted publicly to Defendant RCA's official website, wherein Defendant RCA: directly promotes both the Infringing Work and the derivative Infringing Work Music Video; explicitly solicits public streaming of both the Infringing Work and the derivative Infringing Work Music Video; and explicitly solicits the public to *purchase* copies of the Infringing Work. *See* the May 6th, 2018 RCA online press release annexed hereto as **EXHIBIT G**. In other examples, which are but two of numerous examples where Defendant Roc Nation's overtly has furthered the continuing infringement, Roc Nation's website directs visitors specifically to stream the "Guava Island" film prominently

containing the Infringing Work and features a "news" update of the Infringing Work's Grammy award. Indeed, upon information and belief, all of the Label Defendants, personally and/or through their subsidiaries, have overtly promoted and marketed multiple instances of the continuing infringing use of the Copyrighted Material by way of its unauthorized inclusion in the Infringing Work.

66.     Upon further information and belief, the Label Defendants are individually and jointly responsible for the administration and/or distribution of the various streams of revenue derived from conduct that continues to infringe upon Nwosuocha's full ownership of the copyright to the Copyrighted Material, including, but not limited to, the various examples of infringing conduct described above.

67.     Upon information and belief, Defendants Glover, Williams, and Göransson, as the three parties credited with writing the Infringing Work, have continuously derived significant financial and professional benefits directly resulting from conduct that continues to infringe upon Nwosuocha's full ownership of the copyright to the Copyrighted Material, including, but not limited to, the various examples of infringing conduct described above.

68.     Further, Defendants Williams and Göransson both took affirmative public steps to advance their financial interests as credited writers of the Infringing Work by promoting, encouraging, and/or soliciting the widespread global dissemination of the Infringing Work. Illustrative examples of such conduct by Defendants Williams and Göransson include, but are not limited to, Defendant Williams doing a promotional video piece for major streaming platform Spotify publicly released on or about May 8th, 2018 that solicited end users to stream the Infringing Work on Spotify, and Defendant Göransson championing the Infringing Work as a song that "speaks to people; it connects right to your soul. It calls out injustice, celebrates life

and reunites us all at the same time" directly to the countless viewers of his highly-televised acceptance speech for the Grammy given to the Infringing Work.

69.     Upon information and belief, as a direct result of the streaming, licensing, sale, derivative streaming/licensing/sale/exploitation, synchronization licensing, live performance, reproduction, marketing, promotion, and/or other exploitation of the Infringing Work, all Defendants have wrongfully benefited, and continue to wrongfully benefit, from their continued wrongful uses of Infringing Work and/or the derivative Infringing Work Music Video that both include material to which Nwosuocha owns full copyrights. Because the foregoing sets forth only that portion of Defendants' infringing conduct that has been reasonably discoverable and ascertainable to Nwosuocha in the time since the Defendants' infringing conduct first became public on May 6th, 2018, the foregoing likely may only represent a portion of the totality of the infringing conduct for which Defendants are liable to Nwosuocha either on individual and/or joint bases.

70.     On December 7th, 2020 Nwosuocha's undersigned counsel sent a letter to Defendants Glover, Williams, Göransson, Sony, and RCA in order to put the Defendants on formal notice of Nwosuocha's objection to the Defendants' unauthorized and infringing reproduction, publication, promotion, distribution, license, public display, sale and/or exploitation of the Copyrighted Work. The letter also, in good-faith, sought to provide the Defendants an opportunity to discuss a pre-suit resolution to the issue of their continuing infringement that may have avoided the need for Nwosuocha's within resort to the courts. Annexed hereto as **EXHIBIT H** is a true and correct copy of Nwosuocha's counsel's December 7th, 2020 letter to Defendants.

71.     Nwosuocha's counsel received no response to the December 7th, 2020 letter from any of the Defendants except Defendant Glover, whose counsel, Jonathan D. Davis, Esq. ("Mr. Davis"), reached out to the undersigned to ask for materials supporting Nwosuocha's copyright claims, such as Dr. Swanson's report, for Defendant Glover's review. On February 16th, 2021, given that Defendant Glover had opened the lines of communication but still had failed to demonstrate an intent to cure, or even temporarily mitigate, the continuing global infringement of Nwosuocha's Copyrighted Work, the undersigned sent Mr. Davis a cease and desist letter demanding that Defendant Glover immediately cease all of his infringing conduct with respect to the Copyrighted Work, destroy all infringing materials in his possession, custody, and control, and provide Nwosuocha  with a full accounting of all proceeds he derived from the Infringing Work. Annexed hereto as **EXHIBIT I** is a true and correct copy of Nwosuocha's counsel's February 16th, 2021 cease and desist letter. In good-faith, and hoping to convince Defendant Glover to begin abating the continuing infringement of the Copyrighted Work as soon as possible, Nwosuocha also soon thereafter provided Mr. Davis with the corroborative materials he requested for Glover's review.

72.     Despite the foregoing two letters sent by Nwosuocha's counsel, as well as Nwosuocha's counsel's good-faith communications with and informal document disclosure to Glover's counsel, to date none of the Defendants have communicated to Nwosuocha any intention on their parts to cease, desist, and/or otherwise cure any of their continuing willful infringing conduct with respect to the Copyrighted Work. Nwosuocha is not aware of any evidence otherwise demonstrating that any of the Defendants have or will cease, desist, and/or otherwise cure their massive ongoing global infringement of the Copyrighted Work. Given that the notice provided by Nwosuocha was received by Defendants Glover, Williams, Göransson,

Sony, and RCA, the remaining co-defendants (as Defendants Glover's, Williams', and Göransson's publishers and/or record labels and/or distributors, and/or parent corporations thereof) had reasonable opportunity and cause to learn of Nwosuocha's notice from Defendants Glover, Williams, Göransson, Sony Music, and/or RCA. Accordingly, because Nwosuocha's notice clearly set forth his objection to the Defendants' continuing infringement, the Defendants' continuing infringement after that notice is evidence of the willfulness with which they continue to engage in their infringement.

73.     As a result of Defendants' actions described above, Nwosuocha has been directly damaged, and is continuing to be damaged, by Defendants' willful unauthorized and infringing reproduction, publication, promotion, distribution, license, public display, sale and/or exploitation of the Copyrighted Work. Defendants have never accounted to or otherwise paid Nwosuocha for their unauthorized use of the Copyrighted Work.

## FIRST CAUSE OF ACTION
**(DIRECT, CONTRIBUTORY, AND VICARIOUS COPYRIGHT INFRINGEMENT AGAINST ALL DEFENDANTS)**
**(17 U.S.C. § 101, *et seq.*)**

74.     Nwosuocha repeats and re-alleges each of the foregoing paragraphs as though fully set forth herein.

75.     Nwosuocha is the sole and exclusive owner of the U.S. Copyright in all rights, titles, and interests in the Copyrighted Work, "Made in America" as written and recorded by Nwosuocha.

76.     The Defendants' unauthorized reproduction, distribution, public performance, display, creation of derivative works, and other exploitation and/or misappropriation of the Copyrighted Work infringes Nwosuocha's exclusive rights in violation of the Copyright Act, 17 U.S.C. § 101 *et seq*.

77.     The Defendants did not seek or receive permission to copy and/or interpolate any portion of the Copyrighted Work into the Infringing Work, "This is America."

78.     The Defendants' conduct has at all times been knowing, willful, and with complete disregard for Nwosuocha's rights.

79.     As a direct and/or proximate cause of the Defendants' wrongful conduct, Nwosuocha has been irreparably harmed.

80.     The Infringing Work copies quantitatively and qualitatively distinct, important, and recognizable portions and/or elements of the Copyrighted Work.

81.     Specifically, the Infringing Work copies distinctive and important vocal elements of the composition and performance embodied in the Copyrighted Work.

82.     The central inclusion of the foregoing important vocal elements from the Copyrighted Work in the Infringing Work has greatly enhanced the musical and financial value of the Infringing Work.

83.     From the date of the creation of the Infringing Work, all of the Defendants have infringed Nwosuocha's copyright interest in the Copyrighted Work including: (a) by substantially copying and publicly performing, or authorizing the copying and public performances, including publicly performing the Infringing Work at radio, live concerts, and on film, video, television, and otherwise; (b) by authorizing and/or playing a role in the facilitation of the reproduction, distribution and sale of records and digital downloads containing the Infringing Work through the execution of licenses, and/or actually selling, manufacturing, and/or distributing the Infringing Work through various sources; (c) by substantially copying and participating in the related marketing and promotion of the sale of the records, videos, tickets to concerts and other performances, and other merchandise; and (d) by participating in and

furthering the aforementioned infringing acts, and/or sharing in the proceeds therefrom, all through substantial use of elements of the Copyrighted Work in and as part of the Infringing Work, packaged in a variety of configurations and digital downloads, mixes and versions, and performed in a variety of ways including via radio, streaming services, concerts, film, video, television, and/or otherwise.

84.     Nwosuocha has received no songwriter credit and no copyright ownership interests in and for any exploitations of the Infringing Work or any of the works associated with the Infringing Work.

85.     The infringement by the Defendants has been, and continues to be, willful and knowing.

86.     With knowledge of the infringement, the Defendants have induced, caused, or materially contributed to the infringing conduct of others, such that they should be found to be contributorily liable.

87.     The Defendants had the right and ability to control other infringers and have derived a direct financial benefit from that infringement such that the Defendants should be found vicariously liable.

88.     The infringement is continuing, as the Infringing Work continues to be sold, licensed, performed, displayed, merchandised, and/or otherwise used and/or exploited by the Defendants or their agents.

89.     As a direct and proximate result of the conduct of the Defendants, Nwosuocha has suffered actual damages including lost profits, lost opportunities, and loss of goodwill, while Defendants have profited in the amount of hundreds of millions of dollars and to be determined at trial from their infringement.

90.     Pursuant to 17 U.S.C. § 504(b), Nwosuocha is entitled to damages including the substantial profits of the Defendant, as will be proven at trial.

91.     In the alternative, pursuant to 17 U.S.C. § 504(c), Nwosuocha is entitled to the maximum statutory damages of $150,000 per infringement, since the Defendants' willful and continuing infringement occurred after Nwosuocha's full-owned copyrights in the Copyrighted Work were registered and after the Copyrighted Work had been published and made widely publicly-accessible.

92.     Nwosuocha is entitled to his costs, including reasonably attorneys' fees, pursuant to 17 U.S.C. § 505.

93.     Defendants' conduct is causing, and unless enjoined by this Court, will continue to cause Nwosuocha irreparable injury that cannot be fully compensated or measured in monetary terms. Nwosuocha has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Nwosuocha is entitled to a permanent injunction prohibiting the reproduction, distribution, sale, public performance, or other use or exploitation of the Infringing Work, including all derivatives thereof, in any and all formats, configurations and/or media.

## RELIEF REQUESTED

**WHEREFORE**, Nwosuocha respectfully requests that judgment be entered against the enumerated Defendants, as follows:

A.     A declaration that Defendants have willfully infringed Nwosuocha's Copyrighted Work in violation of the Copyright Act;

B.     A declaration that Defendants are directly, vicariously and/or contributorily liable for copyright infringement, as applicable;

C.      A permanent injunction requiring Defendants and their agents, employees, officers, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert or participation with each or any one of them, to cease directly and directly infringing, and causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating in the infringement of any of Nwosuocha's rights protected by the Copyright Act;

D.      An award of damages pursuant to 17 U.S. § 504(b), including actual damages, and the profits of the Defendants as will be proven at trial, including all profits and damages from exploitation of the Copyrighted Work domestically and internationally, as well as any and all profits and damages in the following categories attributable to the infringement, including but not limited to:

(1)      Record sales;
(2)      Downloads;
(3)      Ringtones;
(4)      Ringback tones;
(5)      Public performance revenues;
(6)      Digital revenue;
(7)      Streaming revenue;
(8)      Synchronization licensing;
(9)      Merchandising;
(10)     Public appearances;
(11)     Endorsements;
(12)     Sponsorships;
(13)     Spokesperson work;
(14)     Touring revenue;
(15)     Advertising revenue;
(16)     Appearance fees;
(17)     Name and likeness income and increase in value;
(18)     Rights of publicity income and increase in value;
(19)     Increased value in all Defendants' publishing and/or record company and/or companies;
(20)     Increased value of all Defendants' catalogues;
(21)     Increased value of music publishing and/or record royalties and rights;
(22)     Increased value of social media rights, accounts and value;
(23)     Increased goodwill;
(24)     Promotional value;
(25)     Increased value of royalty rate for record deals;

(26)   Increased value in distribution deals, negotiating power and reduction in costs;

(27)   Value of obtaining lower cost of administration fees and/or increased advances for publishing deals;

(28)   Value of obtaining better terms for record company advances and terms and multi-record deals;

(29)   Value of obtaining better terms of publishing and/or recorded master deals for the existing catalogue and for future works of Defendants Glover, Williams, and Göransson;

(30)   Increased value in negotiating 360 deals with record companies and/or publishers;

(31)   Sheet music sales and sheet folio income;

(32)   Any and all music publisher income;

(33)   Any and all record master income;

(34)   Any and all record income;

(35)   Any and all SoundExchange, BMI, ASCAP, PRS, SESAC, PPL, SOCAN, MCPS, Harry Fox Agency, and any and all collection society, mechanical society and performance society income worldwide;

(36)   Any and all producer royalty income;

(37)   Any and all arrangement income;

(38)   Any and all income derived from any existing medium or any medium hereinafter developed worldwide;

(39)   Any and all income from any new collection society and/or collection agency to be created anywhere in the world, including by the U.S. Congress under the Music Modernization Act;

(40)   Any and all income from any society to which any Defendant belongs or joins in the future;

(41)   Any and all income and/or residuals from SAG-AFTRA;

(42)   Any and all income from Apple, iTunes, Amazon, Spotify, Pandora, Rhapsody, and any and all download and streaming services; and

(43)   Any and all of Defendants' equity interests in Spotify, and any other music streaming or download services or companies in which one or more Defendant has an interest, as it relates to the value from the inclusion of the infringing song in the service.

E.   In the alternative, an award of statutory damages, pursuant to 17 U.S. § 504(c), in the amount of $150,000 for each act of infringement;

F.   An award of compensatory and special damages in accordance with proof at trial;

G.   An award of attorneys' fees and full costs pursuant to 17 U.S. § 505 and under other applicable law;

H.   For pre-judgment and post-judgment interest according to law, as applicable; and

I.   For such other and further relief as this Court may deem just and proper.

## REQUEST FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Nwosuocha demands a trial by jury as to all issues triable by jury, as enumerated and set forth in more detail in this Complaint.

Dated: New York, New York
      May 5, 2021

Respectfully submitted,

**AIDALA, BERTUNA & KAMINS, P.C.**
By: /s/ Imran H. Ansari
Imran H. Ansari, Esq.
546 Fifth Avenue, 6th Floor
New York, NY 10036
T: (212) 486-0011
F: (212) 750-8297
iansari@aidalalaw.com

*and*

**MIAMI ENTERTAINMENT LAW GROUP**
By: /s/ La'Shawn N. Thomas
La'Shawn N. Thomas, Esq.
261 North University Drive, Suite 500
Plantation, Florida 33324
T: (305) 417-6450
F: (305) 417-6452
LThomas@MiamiEntertainmentLawGroup.com
*Pro Hac Vice Application Forthcoming*

*Attorneys for Plaintiff Emelike Nwosuocha*