**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------X
EMELIKE NWOSUOCHA,

                       Plaintiff,

          v.

DONALD MCKINLEY GLOVER, II, et al.,

                      Defendants.

------------------------------------------------------------------X

1:21-cv-04047 (VM)

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO JOINT MOTION TO DISMISS THE COMPLAINT

This memorandum of law is respectfully submitted in opposition to Defendants' joint motion for an order dismissing the Complaint (ECF No. 90)(the "Motion"). Defendants move for dismissal on the following two bases: (1) they argue that Plaintiff cannot maintain his claims because his composition "Made in America" ("Plaintiff's Composition") is not registered with the United States Copyright Office (the "USCO"); and (2) they argue that Plaintiff fails to adequately plead or "access" or "substantial similarity" between Plaintiff's Composition and "This is America" ("Infringing Composition"). Def. Mem. at 2. For the reasons set forth below, Defendants' arguments are without merit, and – with respect to the latter argument – Defendants' Motion mischaracterizes the nature of the infringement claims at issue in this action, and fails to argue applicable legal standards.

**I.      Plaintiff Registered the Copyright for His Composition Before Filing Suit**

Defendants argue that Plaintiff "cannot sue for infringement because he failed to register the copyright for Plaintiff's Composition." *Id*. at 3. Defendants base this argument on the fact that the Certificate of Registration[1] for Plaintiff's Composition reflects a copyright registration for an unpublished collective work submitted under the *sound recording* designation. Defendants assert that this registration "thus limits [Plaintiff's] authorship to the 'sound recording'" and "lacks the additional description needed to claim a copyright in the underlying *musical composition*." *Id*. Defendants conclude that Plaintiff therefore cannot maintain the instant action, which asserts infringement on Plaintiff's copyrighted Composition. Defendants' conclusion in this regard is erroneous; USCO policy and procedure expressly permitted Plaintiff to simultaneously register copyrights in the sound recordings *and* compositions embodied in the underlying unpublished collective work – by using a single *sound recording* registration.

The USCO permits unpublished sound recordings *and* their underlying compositions to be registered simultaneously under the Sound Recording designation under USCO Circular 56A, which provides, in relevant part, that one may accomplish such simultaneous registration when: (a) claimant is the author of both the sound recording and the work embodied in the recording, or the owner of the copyright in both; (b) claimant checks "Sound Recording" under the "Author Created" section of the registration; and (c) claimant submits a phonorecord containing both the sound recording and the musical composition embodied in that recording.[2] Further, pursuant to applicable USCO policy and procedure, where a party identifies itself as the sole claimant and author in registering an unpublished collective work of sound recordings, the party's claim of ownership may subsume every creative contribution appearing in the collective work, including every compositional element therein. USCO, Compendium § 101 (3d ed. 2014) annexed hereto as **Exhibit C** at 509-509.2 (defining collective works as "constituting separate and independent [copyrightable] works in themselves;" an "applicant may register a collective work *together with the contributions* contained therein (i) if the contributions and the collective work were created by the same author, or (ii) if the copyright in the contributions and the collective work are owned by the same claimant, (iii) provided that the contributions and the collective work have not been previously published, [previously registered, and are not public domain].")[3]

---

[1] Plaintiff's Certificate of Registration is annexed hereto as **Exhibit A**.
[2] *See* USCO Circular 56A annexed hereto as **Exhibit B** at 4-7.
[3] *See also* USCO, Compendium § 101 (3d ed. 2021) annexed hereto as **Exhibit D** at 509-509.2 (same); **Ex. B** at 7 (applicant may use one *sound recording* application to register "a number of musical compositions and sound recordings as a collective work if the applicant owns the musical compositions and sound recordings . . . and the musical compositions and sound recordings have not been previously published or previously registered.")

1

Per the USCO policies and procedures described above, Plaintiff registered copyrights in all sound recordings and constituent, underlying, protectable contributions contained in the collective work "Eleven: The Junior Senior Year," an unpublished album at the time of registration containing Plaintiff's Composition as a constituent, individually protectable contribution. Under USCO policy and procedure, Plaintiff used one *sound recording* registration to register his collective work of sound recordings and underlying compositions, filed the registration as sole claimant *and* sole author of the collective work, and effectuated a valid registration for the collective work extending to all musical compositions therein, including for "Made in America."[4]

Defendants seek to persuade this Court that Plaintiff's copyright registration does not extend to Plaintiff's Composition by virtue of "lack[ing] the additional description needed to claim a copyright in the underlying musical composition." Def. Mem. at 3. Besides being meritless considering the USCO policies and procedures set forth above, Defendants' argument—premised on the purported non-inclusion of a 'description' in Plaintiff's copyright registration application—is also erroneous pursuant to *Unicolors, Inc. v H&M Hennes & Mauritz, L.P.*, 142 S Ct 941, 945 (2022). In that case, the Supreme Court held that a certificate of registration for a copyrighted work will be valid *even if it contains inaccurate information*, as long as the copyright holder lacked knowledge that it was inaccurate. 142 S Ct at 945. Defendants do not—and cannot—allege any knowing or willful artifice perpetrated upon the USCO by Plaintiff in filing his application, and their conclusory assertions about what *they* perceive to be a missing description in Plaintiff's Certificate of Registration should not serve as a basis for dismissal on the pleadings. *See id*. at 946-48.

## II. Plaintiff Has Adequately Plead Substantial Similarity

In this action, Plaintiff alleges that the chorus, or "hook," of Plaintiff's Composition has been infringed upon by the Defendants in the Infringing Composition. Compl. ¶¶ 39-43. The Complaint pleads that the hook of the Infringing Composition is substantially similar to the hook of Plaintiff's Composition in lyrical, rhythmic, structural, timbral, melodic, and thematic content. *Id*. Defendants acknowledge that such similarities between the songs' respective hooks constitute "the crux of Plaintiff's claim." Def. Mem. at 2. The Complaint describes these similarities and incorporates supportive exhibits, in the form of expert analysis and from the perspective of disinterested lay listeners commenting on the work(s) online. *Id*.; Compl. Ex. C; Compl. Ex. D at 10-17. Plaintiff attached a report from expert musicologist Dr. Brent Swanson, whose report is incorporated by reference into the Complaint, and who opined that the hooks in each composition are substantially similar to an extent beyond coincidence. Compl. Ex. D at 10-17. Dr. Swanson's report contains figures, analyses, and multiple means of scientific methodology by which he reached his expert conclusion.[5] Concerning the songs' discernible similarity from a lay perspective, the Complaint attaches and incorporates by reference an exhibit displaying

---

[4] *See* USCO Circular 56A at 7 ("For example, a CD [] with multiple tracks that embody musical compositions and sound recordings is considered a collective work. If the [party] selecting, coordinating, or arranging the musical compositions and sound recordings on the album also owns the sound recordings, which were not previously published or registered, then the album and sound recordings may be registered with one application as a collective work. *If that party also owns the musical compositions*, which were not previously published or registered, **then the collective work registration would also extend to the musical compositions**.")(emphasis added).

[5] *See* Compl. Ex. D 10-17 (analyzing near-identical rhythmic nature of the vocal transients contained within each hook's waveform when controlled for beats per minute value; analyzing comparative spectrographic profile of melodic contours in each hook, concluding that contours of melody employed in each hook are "similar," "have much more in common than they do differences.")

2

screenshots taken from major streaming platforms, where disinterested listeners of the public have expressly observed the significant audible similarity between the two compositions—in public comments posted long before the instant action was filed.[6]

Despite the particularity with which Plaintiff pleads several facets of substantial similarity between the compositions, Defendants ask this Court to rule as a matter of law that *no* reasonable jury find substantial similarity between the songs and/or that any similarities between the songs "consist of nothing more than non-copyrightable material." Def. Mem. at 4. Defendants do not challenge or address the contents or merits of Dr. Swanson's expert report incorporated into the Complaint. Defendants also do not challenge or address the Complaint's incorporated exhibit that shows screenshots of public comments on major streaming platforms referencing similarities between the songs and alluding to copying by "Gambino," Defendant Glover's stage name. Given that Dr. Swanson's report and the online public comments are incorporated in the Complaint, are probative of a listening public's ability to find substantial similarity, and are unchallenged, the substantial similarity question "depends on a subjective assessment better suited for a jury than a court" at this stage of this action, remaining a "question of non-infringement [] traditionally [] reserved for the trier of fact" rather than on motion to dismiss. *Est. of Smith v. Cash Money Records*, 253 F. Supp. 3d 737, 748 (S.D.N.Y. 2017); *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010); *Hines v. W Chappell Music Corp.*, 2021 U.S. Dist. LEXIS 107398, at *7-9 (S.D.N.Y. June 8, 2021)(expert musicologist report attached to complaint—finding "identical" or "near-identical pitches and rhythmic values" in songs—constituted facts "enough to support an inference" defendants copied plaintiff's work such that question of substantial similarity could not be foreclosed on the pleadings.)(quoting *Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 25 F.3d 119, 123 (2d Cir. 1994)).[7]

In attempting to persuade this Court to find no substantial similarity between the songs as a matter of law, Defendants advance a muddled and inconsistent cacophony of points that fails to address the applicable substantial similarity test, misstates the nature of protectability in relevant compositional elements, and advances substantively irrelevant arguments based on the Defendants' subjective assessment of the songs' comparative nature, merits, and meanings.

First, even though Defendants concede "the crux" of Plaintiff's claims is infringement between the *hooks* in Plaintiff's Composition and the Infringing Composition,[8] three of Defendants' six listed points on substantial similarity address song aspects outside the hooks, beyond the scope of the claims, and thus non-probative for this Motion's purpose. Defendants' third point addresses "instrumentation" and overall melodic "impression,"[9] areas for which the Complaint does not assert infringement. As such, the Court should disregard this irrelevant third point. Defendants' fourth point addresses the instruments and musical production in the overall songs,[10] areas also outside the infringement asserted in the Complaint. As such, the Court should disregard this irrelevant fourth point. Defendants' fifth point addresses the overall structure of the songs, order and number of verse and chorus sections, also outside the infringement asserted in

---

[6] *See* Compl. Ex. C (public YouTube and SoundCloud comments, "**Gambino ripped this shit off you** G," "**anyone gonna ask Childish Gambino** about this song???," "**Childish gambino gotta give you creds** [*credit*] for the **flow** and *everything*.")(emphasis added).

[7] *See also McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007)(in considering motion to dismiss, a district court should consider "the facts as asserted within the four corners of the complaint" and "the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference.").

[8] *See* Def. Mem at 5.

[9] *See id*. at 5.

[10] *See id*. at 5-6.

3

the Complaint. As such, the Court should disregard this irrelevant fifth point.[11] The third and fourth points are also outside the scope of Defendants' Pre-Motion letters[12] to which the Court substantively bound their briefing (ECF No. 81) and should accordingly also be disregarded on that basis.[13]

Turning to the portions of Defendants' substantial similarity argument probative of the claims, as an initial matter Defendants' argument relies on myopic analyses of isolated elements in the respective songs and fails to comport with this Circuit's applicable test. Because the hooks in both songs consist of protectable and unprotectable elements, the test in this Circuit is the "more discerning" test, under which the court attempts to extract unprotectable elements from consideration and ask whether protectable elements are substantially similar such that a reasonable jury could find them so. *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1002 (2d Cir. 1995). Though Defendants appear to partially reference this test, Defendants neglect the following: the test contemplates the reality that creative works often consist mostly, or *entirely*, of individually unprotectable elements that, when creatively, originally arranged and compiled, make up a protectable work. *Walkie Check Prods., LLC v. ViacomCBS Inc.*, 2022 U.S. Dist. LEXIS 113357, at *22 (S.D.N.Y. June 27, 2022).[14] Indeed, it is settled that "[t]he Copyright Act protects original and minimally creative selection of preexisting, unprotected materials (such as facts) for inclusion in a work, as well as original and creative arrangement of those materials." *Matthew Bender & Co. v. West Pub. Co.*, 158 F.3d 674, 681 (2d Cir. 1998)(*citing Eckes v. Card Prices Update*, 736 F.2d 859, 863 (2d Cir. 1984)). Neglecting this basic precept of the "more discerning" test, Defendants: (i) myopically assert non-protectability of the single word "America;" (ii) argue multiple songs have incorporated or been titled the phrase "Made in America" despite the absence of any allegations in the pleading asserting literal incorporation or infringement of that phrase; and (iii) conclude summarily that Plaintiff's claims concerning the "flows" used in the hooks are "based on [a] vocal style of performance of the chorus" that is a "non-composition element [] outside the scope" of Plaintiff's "compositional registration."[15] Defendants' point as to the protectability of the isolated word "America" fails to engage the "more discerning" inquiry. So does their point about the literal three-word phrase "Made in America," which is also unresponsive to any allegation raised in the Complaint. Moreover, Defendants' conclusory characterizations of "flow" are both inaccurate and inconsistent with their own arguments addressing the songs' flows.

Contrary to Defendants' argument, a "flow" is not a performance element; it is a *compositional* element. Flow refers to distinct vocal *rhythms* produced by metrical and articulative choices made by a given artist in composing a given set of rap lyrics. Distinct combinations, manipulations, and variances of such choices produce distinct vocal rhythm *i.e.*, flow.[16] Defendants seek to characterize flow as a *performance* element in conclusory fashion, but

---

[11] *See Griffin v. Sheeran*, 351 F. Supp. 3d 492, 500-01 (dissimilarity as matter of law inappropriate; defendant sought to "highlight the difference in 'total concept and feel' of songs" by raising "other elements – song structure, lyrics" not claimed to be similar by plaintiff, creating question "to be determined by trial rather than summarily.")
[12] The Pre-Motion correspondence is annexed hereto as **Exhibit E**.
[13] In foregoing the option to request full briefing (beyond the Court's instant six-page limit)(ECF No. 81), Plaintiff relied on the Court's substantive limiting of Defendants' brief to their Pre-Motion letters. Plaintiff is thus prejudiced by any points or arguments not in Defendants' Pre-Motion letters, including those described in this paragraph.
[14] *See also Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345-46 (1991)(originality does not require a large amount of creativity; "the requisite level of creativity is extremely low; even a slight amount will suffice.")
[15] *See* Def. Mem. at 3-4.
[16] Such choices include the placement of rhyming syllables; the placement of accented syllables; the degree of correspondence between syntactic units and measures; the number of syllables per beat; the amount of legato or staccato used; and the extent to which the onset of any syllable is earlier or later than the beat.

Defendants actually concede flow is a measure of compositional elements and choices in arguing purported "differences in the rhythm of the respective choruses." Def. Mem. at 4-5. To that end, Defendants argue rhythmic elements of vocal composition, such as comparative beats on which utterances occur and pick-up notes, albeit attempting to do so with nonsensical reference to "the *performance* technique of 'triplet *rhythm*." Def. Mem. 4-5 (emphasis added). Indeed, as expert musicologist Dr. Swanson explains, "[Hip-hop's] focus on *rhythm* over specific melodic pitches is known as an MC's (rapper's) 'flow' . . . 'The *rhythmic* style of MCing, or "*flows*," are among the *central* aspects of rap *production* and *reception*, and any discussion of rap *production* that takes musical poets seriously demands a vocabulary of flow.'" Compl. Ex. D at 10-13 (emphasis added). Dr. Swanson's report displays, analyzes, and describes quantifiable similarities between the *flows* at issue, and, based on those similarities, opines that the flows are similar to a degree likely beyond coincidence. *Id.* at 10-17. Counter to Defendants' assertions that flows are unprotectable, a flow constitutes an original element of rhythmic vocal composition—produced via creative selection, combination, manipulation, and variance of syllabic rhythm, placement, length, arrangement, and structure—and thus is itself protectable. *Hines*, 2021 U.S. Dist. LEXIS 107398 at *5 (in context of musical composition, copyright protects non-banal elements of *composition*, such as compilation or combination of "notes, rhythm, and harmony.")(internal quotations omitted)(emphasis added); *Pyatt v. Jean*, 2006 U.S. Dist. LEXIS 113149, at *15 (E.D.N.Y. Aug. 29, 2006)(motion to dismiss denied; plaintiff's hook combining common vocal elements was unique musical phrase to which defendant's hook was substantially similar in "style," "pitch sequence" despite non-identical vocal melody and rhythms.").[17]

Defendants also fail to dispose of the similarity question by relying on the assertion that Plaintiff's hook employs a flow "common to trap music." First, Defendants do not assert either song at issue is "trap music." Second, Defendants support their assertion by merely: (a) listing names of songs they claim "used" the same flow as the one at issue here; and (b) excerpting a Wikipedia page's description of "Trap Music," which solely addresses "lyrical themes," does not address flow or any other element of rhythm, and does not ostensibly fit the content of either song at issue. Def. Mem. at 4 n.5,7. Defendants accordingly fail to support their "trap music" theory of unoriginality with material sufficiently probative of unoriginality as a matter of law.[18]

Defendants further fail to dispose of the similarity question with their sixth, final substantial similarity argument consisting of little more than lengthy, non-substantive, arbitrary exposition on their subjective assessments of the lyrical "themes," nature, merits, and meanings of

---

[17] *See also Griffin v. Sheeran*, 351 F. Supp. 3d 492, 499-501 (S.D.N.Y. 2019)(noninfringement a question of fact; jury could find "several probative similarities" between songs, including elements of harmonic progression, harmonic rhythm, syncopation, and pitch sequence); *Levine v. McDonald's Corp.*, 735 F. Supp. 92, 98 (S.D.N.Y. 1990)(defendants' arguments that "single elements, such as [] monotonic repetition of sixteenth notes, are unprotectable, [] have not convinced the Court that plaintiffs did not create a protectible work by combining various common elements so as to produce a unique [work]."); *Glover v. Austin*, 289 F. App'x 430, 431-32 (2d Cir. 2008)(similarity question of fact where record included unrebutted expert finding of significant similarity in "harmony, rhythm, melody," musical phrasing.); *New Old Music Grp., Inc. v. Gottwald*, 122 F. Supp. 3d 78, 87 (S.D.N.Y. 2015)(question of fact; defendants argued unoriginality based on prior songs containing the challenged rhythmic elements in combination, while plaintiff argued none of prior works combined elements the same way as his song.); *Consolidated Music Publishers, Inc. v. Ashley Publications, Inc*., 197 F. Supp. 17, 18 (S.D.N.Y. 1961).

[18] *See May v. Sony Music Entm't*, 399 F. Supp. 3d 169, 178 (S.D.N.Y. 2019)(commonality argument regarding vocal phrase was supported by items "obtained from websites" that "may well confirm defendants' contention. But that is a matter to be explored in discovery and ultimately considered on summary judgment . . . while the court may take [] notice [of these items], the existence of factual questions about their content militates against taking judicial notice for the purposes that defendants ascribe to them.").

5

the two songs. Defendants start by offering their take on lyrics and themes in Plaintiff's overall composition, a take equal parts self-serving, inaccurate, and needlessly deprecatory of Plaintiff and his creative expression. Defendants sum up Plaintiff's Composition as a "short, simple, self-aggrandizing proclamation" by a "boastful rapper," without any reference to how this opinion is probative of the similarity question under any applicable standard. To support their opinion, Defendants selectively quote isolated lyrics and frame them in terms of boastfulness.[19] This pattern extends improbably even to a line, "Heads up for the bullets that coming from the [police]," which Defendants arbitrarily fictionalize as a boast about dangers created by Plaintiff's "celebrity" and "swagger." Def. Mem. at 6. Summarizing the Infringing Composition, Defendants' review switches from trivializing to laudatory in tone. Defendants describe the Infringing Composition in terms like "complex," "cautionary," "provocative," "imperative," concluding that the Infringing Composition showcases "a narrator"—not a rapper—"observing the American landscape." *Id*. at 6-7. Defendants carry on this editorial review of the songs' respective lyrics and "themes" for five paragraphs without a cite to relevant authority, evidence, or law to be seen.[20] None of these unsupported, subjective, arbitrary characterizations are probative of dissimilarity as a matter of law. *Gaito*, 602 F.3d at 64.

### III.    Plaintiff Adequately Pleads Access

Defendants' argument that Plaintiff fails to plead access omits settled law in this Circuit recognizing an inverse relationship between access and probative similarity, and is resultingly without merit. *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 56 (2d Cir. 2003). The stronger a plaintiff's evidence of probative similarity, the less evidence of access is required. *Glover*, 289 F. App'x 430, 432 (2d Cir. 2008). This inverse relationship reflects the courts' recognition that "direct evidence of copying is seldom available" to rightsholders. *Lipton v. Nature Co*., 71 F.3d 464, 471 (2d Cir. 1995). Thus, where two works are "so strikingly similar as to preclude the possibility of independent creation, copying may be proved without a showing of access." *Jorgensen*, 351 F.3d at 56. Though *proving* striking similarity may be a "heavy" burden, "at the motion to dismiss stage, an allegation of striking similarity need only be plausible to survive." *Krisko v. Marvel Entm't, LLC*, 473 F. Supp. 3d 288, 305 (S.D.N.Y. 2020). To meet the plausibility standard for striking similarity at this stage, Plaintiff may rely on indirect evidence giving rise to a plausible inference of access, including evidence probative of Defendants' ability to access the copyrighted work, "similarities [] probative of copying between the works, and expert testimony." *Boisson v. Banian, Ltd*., 273 F.3d 262, 267 (2d Cir. 2001). Given the standard at this stage, Plaintiff has satisfied his burden with respect to striking similarity by (i) alleging plausible, specific areas of infringement; (ii) incorporating expert evidence probative of a striking degree of similarity between the works; and (iii) incorporating evidence probative of the listening's public's ability to find striking similarity between the works. *Krisko*, 473 F. Supp. at 304-09 (S.D.N.Y. 2020); *Repp v. Webber*, 132 F.3d 882, 890-91 (2d Cir. 1997).

### **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants motion to dismiss and award such other and further relief as it deems just and proper.

---

[19] Boastfulness is a common hip-hop standard ascribable to lyrics in the Infringing Composition too. *See id*. at 7 (quoting "I'm so fitted…I'm on Gucci…I'm so pretty;" "I got the plug in Oaxaca;" "Look how I'm livin.'").

[20] Defendants conclude their brief by randomly footnoting an unexplained, arbitrary list of various songs. Defendants offer no characterization of these songs or provide any explanation for their relevance. Plaintiff submits that the Court should not take notice of or consider these songs in ruling on this Motion.

Dated: New York, New York
September 15, 2022

        Respectfully submitted,

        **AIDALA, BERTUNA & KAMINS, P.C.**

By: /s/ Imran H. Ansari
        Imran H. Ansari, Esq.
        546 Fifth Avenue, 6th Floor
        New York, NY 10036
        T: (212) 486-0011
        F: (212) 750-8297
        iansari@aidalalaw.com

        *and*

        **MIAMI ENTERTAINMENT LAW GROUP**

By: /s/ La'Shawn N. Thomas
        La'Shawn N. Thomas, Esq.
        261 North University Drive, Suite 500
        Plantation, Florida 33324
        T: (305) 417-6450
        F: (305) 417-6452
        LThomas@MiamiEntertainmentLawGroup.com
        *Pro Hac Vice Application Forthcoming*

        *Attorneys for Plaintiff Emelike Nwosuocha*