```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/20/2025
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

EMELIKE NWOSUOCHA,

                        Plaintiff,

            - against -

DONALD MCKINLEY GLOVER, II, ET AL.,

                        Defendants,

**21 Civ. 04047 (VM)**

<u>DECISION</u> <u>AND</u> <u>ORDER</u>

**VICTOR MARRERO, United States District Judge.**

Plaintiff Emelike Nwosuocha ("Nwosuocha") brought this copyright action naming as defendants: Donald McKinley Glover, II ("Glover"), Jeffrey Lamar Williams ("Williams"), Ludwig Emil Tomas Göransson ("Göransson"), Kobalt Music Publishing America, Inc. d/b/a/ Songs of Kobalt Music Publishing ("Kobalt Music"), RCA Records, Sony Music Entertainment ("Sony Music"), Young Stoner Life Publishing, LLC ("YSL"), 300 Entertainment LLC f/k/a Theory Entertainment LLC d/b/a 300 Entertainment ("300 Entertainment"), Atlantic Recording Corporation ("Atlantic"), Roc Nation Publishing d/b/a Songs of Roc Nation ("Roc Nation"), Songs of Universal, Inc. ("Universal"), Warner Music Group Corp., and Warner-Tamerlane Publishing Corp. ("Warner-Tamerlane") (collectively, "Defendants").[1] Nwosuocha alleges that

---

[1] Defendants RCA Records and Warner Music Group, Corp. were voluntarily dismissed without prejudice from this action on April 28, 2022, (<u>see</u> Dkt. No. 78), and are therefore excluded from the definition of "Defendants."

Defendants' song "This is America" infringed on the copyright of Nwosuocha's song "Made in America." In a previous Decision and Order, the Court granted Defendants' motion to dismiss in full because (1) Nwosuocha had not registered a copyright for his musical composition, a statutory prerequisite under Section 411(a) of the Copyright Act, and (2) even if Nwosuocha had a copyright registration, dismissal was warranted because the songs at issue were not substantially similar. (See "Decision & Order," Dkt. No. 100.) Defendants now submit their application for attorneys' fees and costs (the "Fee Motion") pursuant to Section 505 of the Copyright Act, seeking a total of $934,653.85 in fees and costs accrued among three law firms that provided legal services to Defendants in connection with this litigation. For the reasons discussed below, Defendants' Fee Motion is GRANTED IN PART and DENIED IN PART.

## I.  <u>BACKGROUND</u>

The Court presumes the parties' familiarity with the facts of this case, which are explained in greater detail in the Court's prior ruling granting Defendants' motion to dismiss. (See Decision & Order.) In brief, Nwosuocha published his song "Made in America" on an online streaming platform in 2016. (Id. at 3.) Nwosuocha registered "Made in America" with the United States Copyright Office in 2017 and was subsequently issued a sound recording registration. (Id.)

In 2018, Defendants publicly released "This is America," which received critical acclaim and widespread commercial success, with the song debuting at number one on the Billboard Hot 100 and winning the 2019 Grammy Award for Record of the Year. (Id. at 4-5.)

In 2021, Nwosuocha brought this copyright action against Defendants, alleging that Defendants' song "This is America" infringed on the lyrical themes, content, and structure of Nwosuocha's song "Made in America." (Id. at 3-4, 15.) The parties exchanged pre-motion letters pursuant to the Court's Individual Practices in anticipation of Defendants' motion to dismiss. (Id. at 5.) Unable to resolve the dispute through pre-motion letters, Defendants subsequently filed their joint motion to dismiss, to which Nwosuocha filed an opposition, and Defendants filed a joint reply. (Id. at 6.)

The Court granted Defendants' motion to dismiss Nwosuocha's complaint for failure to state a claim on two grounds. First, Nwosuocha's copyright claim failed as a matter of law because Nwosuocha did not obtain a copyright registration for his musical work, a prerequisite to sue for copyright infringement of a musical composition. See 17 U.S.C. § 411(a). (See Decision & Order at 13-18.) That Nwosuocha obtained a sound recording registration was unavailing because sound recordings and musical works are

distinct copyrights and Nwosuocha alleged only infringement of his musical work, not his sound recording. (See Decision & Order at 13-15.) Second, even if Nwosuocha had a musical work registration, dismissal was still warranted because no reasonable jury could find that the two songs were substantially similar. (Id. at 18-21.)

On appeal, the Second Circuit affirmed the Court's dismissal of Nwosuocha's complaint on the ground that Nwosuocha failed to obtain a copyright registration for his musical work. Nwosuocha v. Glover, No. 23-703, 2024 WL 2105473 (2d Cir. May 10, 2024). The Second Circuit did not reach the issue of whether the two songs were substantially similar. (Id. at *1.)

Defendants subsequently filed this Fee Motion pursuant to Section 505 of the Copyright Act, 17 U.S.C. § 505, which authorizes an award of attorneys' fees and costs to the prevailing party. ("Fee Mot. Mem.," Dkt. No. 114.) Defendants seek compensation for work performed during three distinct periods of this litigation: (1) defending the merits before the District Court, (2) defending the subsequent appeal to the Second Circuit, and (3) preparing the instant Fee Motion. Three law firms have represented Defendants – and accrued fees - in this litigation: Pryor Cashman LLP ("Pryor Cashman") on behalf of Universal, Quinn Emanuel Urquhart & Sullivan LLP

("Quinn Emanuel") on behalf of Roc Nation, and Jonathan D. Davis, P.C. (the "Davis Firm") on behalf of the other nine Defendants.[2]

In support of the Fee Motion, each law firm submitted a declaration listing the attorneys and paralegals that staffed the matter, their hourly rates, hours billed, the attorneys' seniority levels and experience, and the law firm's experience in copyright cases. (See "Davis Declaration" or "Davis Decl.," Dkt. No. 111; "Zakarin Declaration" or "Zakarin Decl.," Dkt. No. 112; "Maslo Declaration" or "Maslo Decl.," Dkt. No. 113.)[3] The declarations included billing records detailing the attorneys' respective firm's work on behalf of Defendants. (See "Davis Decl., Ex. A," Dkt. No. 111-1; "Zakarin Decl., Ex. A," Dkt. No. 112-1; "Maslo Decl., Exs. A-S," Dkt. No. 113-1.) Defendants reserved the right to supplement the Fee Motion with documentation reflecting the fees and costs they incurred in connection with their Reply in support of the Motion. (Fee Mot. Mem. at 18-19.) Nwosuocha filed an Opposition to Defendants' Fee Motion, ("Opp'n Mem.," Dkt. No. 120), along with a letter from Nwosuocha, ("Nwosuocha

---

[2] The Davis Firm represents Defendants Glover, Williams, Göransson, Kobalt Music, Warner-Tamerlane, Sony Music, YSL, 300 Entertainment, and Atlantic (collectively, the "Davis Firm Defendants").

[3] The Davis Declaration is filed on behalf of the Davis Firm, the Zakarin Declaration is filed on behalf of Pryor Cashman, and the Maslo Declaration is filed on behalf of Quinn Emanuel.

Letter," Dkt. No. 122), and an affidavit detailing Nwosuocha's financial status. ("Nwosuocha Financial Affidavit" or "Nwosuocha Fin. Aff.," Dkt. No. 121.) Defendants filed a Reply, ("Reply Mem.," Dkt. No. 123), and submitted additional documentation regarding fees and costs incurred preparing this Fee Motion. (See "Davis Reply Decl.," Dkt. No. 124; "Zakarin Reply Decl.," Dkt. No. 125; "Maslo Reply Decl.," Dkt. No. 126.)

## II.  **STANDARD OF REVIEW**

A district court may award reasonable attorneys' fees as costs to a prevailing party in a copyright infringement action. See 17 U.S.C. § 505. "An award of attorney's fees in a copyright action is not automatic to the prevailing party, but rather a matter of the court's discretion." Minden Pictures, Inc. v. Sup China, Inc., No. 23 Civ. 10312, 2024 WL 4932711, at *8 (S.D.N.Y. Oct. 4, 2024) (citation omitted); Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 (1994) ("[A]ttorney's fees [under Section 505] are to be awarded to prevailing parties only as a matter of the court's discretion.").

If an award of attorneys' fees is appropriate, the court must then determine the reasonableness of the requested fees. See O'Neill v. Flawless Kitty LLC, No. 23 Civ. 5611, 2024 WL

1542915, at *3 (S.D.N.Y. Apr. 10, 2024). A "presumptively reasonable fee" is "the product of a reasonable hourly rate and a reasonable number of hours engaged in litigating the matter." Cawthon v. Nguyen, No. 22 Civ. 7398, 2024 WL 1557301, at *9 (S.D.N.Y. Jan. 23, 2024) (citation omitted). To determine whether an hourly rate is reasonable, the court may look to the prevailing market rates "for similar services by lawyers of reasonably comparable skill, experience, and reputation." Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998) (citation omitted); O'Neill, 2024 WL 1542915, at *4 (the court "should consider the prevailing community's rates in the district in which it sits to determine the reasonableness of counsel's rates"). To evaluate whether the number of hours billed is reasonable, the court should consider if "at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992).

Ultimately, "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates," and hence the reasonableness of the fee application. Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). The prevailing party should "submit records that enable the [c]ourt to determine whether the fee sought is reasonable," Romanowicz v. Alister & Paine, Inc.,

7

No. 17 Civ. 8937, 2018 WL 4762980, at *6 (S.D.N.Y. Aug. 3, 2018), including detailed "contemporaneous time records" documenting "the date, the hours expended, and the nature of the work done" by each attorney. Euro Pac. Cap., Inc. v. Bohai Pharms. Grp., Inc., No. 15 Civ. 4410, 2018 WL 1229842, at *10 (S.D.N.Y. Mar. 9, 2018) (citation omitted). However, "[b]ecause it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." Brunswick Recs. Corp. v. Lastrada Ent. Co., No. 23 Civ. 100, 2023 WL 8703705, at *6 (S.D.N.Y. Dec. 15, 2023) (citations omitted).

### III. DISCUSSION

#### A.   AWARD OF ATTORNEYS' FEES AND COSTS

Defendants are the "prevailing party" in this action and thus meet the threshold qualification for an award of costs and attorneys' fees. 17 U.S.C. § 505. However, prevailing parties are not entitled to fees merely because they succeeded on a motion to dismiss. Silberstein v. Fox Ent. Grp., Inc., 536 F. Supp. 2d 440, 443 (S.D.N.Y. 2008). Attorneys' fees should be awarded only if doing so is "faithful to the purposes of the Copyright Act." Matthew Bender & Co. v. W. Pub. Co., 240 F.3d 116, 122 (2d Cir. 2001) (citation omitted).

The "principal purpose" of the Copyright Act is "to encourage the origination of creative works by attaching enforceable property rights to them." Davis v. Blige, 505 F.3d 90, 105 (2d Cir. 2007) (citation omitted). "This objective is promoted by discouraging infringement as well as by the successful defense of copyright infringement actions." Earth Flag Ltd. v. Alamo Flag Co., 154 F. Supp. 2d 663, 666 (S.D.N.Y. 2001).

Here, Defendants argue that Nwosuocha's copyright claim was objectively unreasonable, strategically motivated, and that a fee award is necessary to deter Nwosuocha from filing unmeritorious litigation and to compensate Defendants for their expenditures. (See Fee Mot. Mem. at 8-13.) Nwosuocha objects to Defendants' characterization of his copyright claim and maintains that an award of attorneys' fees is unwarranted. (See Opp'n Mem.) For the reasons explained below, the Court agrees with Defendants that an award of attorneys' fees and costs is appropriate here.

To determine whether a fee award is appropriate, the court must conduct a "particularized, case-by-case assessment" that "treat[s] prevailing plaintiffs and prevailing defendants" the same. Poppington, LLC v. Brooks, No. 23-660, 2024 WL 1266983, at *1 (2d Cir. Mar. 26, 2024) (citation omitted). Moreover, the court must weigh several

considerations, such as "frivolousness, motivation, objective unreasonableness, and the need in particular circumstances to advance considerations of compensation and deterrence." Kirtsaeng v. John Wiley & Sons, Inc., 579 U.S. 197, 202 (2016) (citing Fogerty, 510 U.S. at 534 n.19). Whether a plaintiff's claim was objectively unreasonable should be accorded "substantial weight." Bryant v. Media Right Prods., Inc., 603 F.3d 135, 144 (2d Cir. 2010).

"'Objective unreasonableness' is generally used to describe claims that have no legal or factual support." Viva Video, Inc. v. Cabrera, 9 F. App'x 77, 80 (2d Cir. 2001). Courts in this district have found that a plaintiff's copyright claim was objectively unreasonable where the plaintiff obtained a copyright registration for only the sound recording, and not for the musical composition. See, e.g., Pickett v. Migos Touring, Inc., No. 18 Civ. 09775, 2020 WL 1853202, at *7 (S.D.N.Y. Feb. 25, 2020). Nwosuocha's copyright claim is no different. As this Court explained in granting Defendants' motion to dismiss, Nwosuocha's claim failed as a matter of law because he did not possess a copyright registration for his musical composition, only a registration for the sound recording of his song. (See Decision & Order at 15.)

Even if Nwosuocha was initially unaware of the flaws of his copyright claim, he was subsequently put on notice of the shortcomings of his claim. Fees in a copyright action can be awarded where a party insists on pressing a claim after learning that it lacks legal or factual support. Bronx Conservatory of Music, Inc. v. Kwoka, No. 21 Civ. 1732, 2024 WL 3521804, at *5 (S.D.N.Y. Apr. 23, 2024). Here, in several pre-motion letters exchanged in accordance with this Court's Individual Practices, Defendants identified (1) Nwosuocha's failure to register his musical composition and (2) that the two songs in dispute were not substantially similar. (See Dkt. No. 72-1 at 1-3.) Undeterred, Nwosuocha maintained that his claim was meritorious despite being put on notice of these fundamental flaws. (Id. at 7-8; see also Dkt. No. 97.) Thus, the Court finds that Nwosuocha's copyright claim was objectively unreasonable and supports an award of attorneys' fees.

Courts routinely award attorneys' fees to prevailing defendants "solely upon a showing that the plaintiff's position was objectively unreasonable." Pyatt v. Raymond, No. 10 Civ. 8764, 2012 WL 1668248, at *4 (S.D.N.Y. May 10, 2012) (citation omitted). Nonetheless, the Court considers Defendants' arguments that Nwosuocha's claim was

strategically motivated and that a fee award is necessary to deter Nwosuocha and compensate Defendants.

Based on the timing of the lawsuit, Defendants argue that Nwosuocha's motivation for filing this meritless action was "a desire for self-promotion and publicity" and the prospect of a large monetary award from parties with "deep pockets." (Fee Mot. Mem. at 11-12.) Courts have considered the timing of a lawsuit following the success of a challenged work as weighing in favor of finding the suit to be opportunistic, recognizing that "[i]n circumstances like these, the prospect of a huge payday may entice litigants to pursue claims with little or no merit." Charles v. Seinfeld, No. 18 Civ. 1196, 2021 WL 761851, at *4 (S.D.N.Y. Feb. 26, 2021). The timing of the lawsuit supports a finding of strategic motivation, as Nwosuocha filed this action after the Defendants' song had generated widespread commercial success and received critical acclaim. (See Decision & Order at 4-5.)

There is no indication, however, that Nwosuocha has filed similar copyright claims against other high-profile recording artists or entities involved in the music industry, which courts have weighed heavily in support of finding the plaintiff had a strategic motivation. See, e.g., Pyatt, 2012 WL 1668248, at *4-5. Nor is this a meritless suit brought by

a "copyright troll play[ing] a numbers game in which it targets hundreds or thousands of defendants seeking quick settlements priced just low enough that it is less expensive for the defendant to pay the troll rather than defend the claim." McDermott v. Monday Monday, LLC, No. 17 Civ. 9230, 2018 WL 5312903, at *2 (S.D.N.Y. Oct. 26, 2018) (citation omitted). Thus, the Court finds that Nwosuocha's strategic motivation in filing this lawsuit weighs modestly in favor of Defendants.

Finally, an award of attorneys' fees here is consistent with the goals of compensation and deterrence, "two equitable considerations that exist for the dual purposes of incentivizing parties with strong claims to litigate them and deterring parties with weak claims from embarking on wasteful litigation." Grecco v. Age Fotostock Am., Inc., No. 21 Civ. 423, 2021 WL 5567615, at *3 (S.D.N.Y. Nov. 29, 2021) (citations and alterations omitted). Failure to award attorneys' fees to a defendant in a case like this "invite[s] others to bring similarly unreasonable actions without fear of any consequences." Earth Flag Ltd., 154 F. Supp. 2d at 668.

Nor will an award of attorneys' fees excessively chill future lawsuits. To avoid chilling future litigation, courts have declined to award attorneys' fees in cases that are

"novel or close" because these types of lawsuits "clarif[y] the boundaries of copyright law." Earth Flag Ltd., 154 F. Supp. 2d at 666; Matthew Bender & Co., 240 F.3d at 126 (an award of attorneys' fees under the Copyright Act should not "deter persons with colorable claims from pursuing those claims" (citation omitted)). There are no concerns about "close or novel" issues here because Nwosuocha's copyright claim was straightforward and without merit on its face. See Earth Flag Ltd., 154 F. Supp. 2d at 668 (awarding fees because the "case presented a straightforward copyright infringement claim that was objectively unreasonable" and a fee award in "such a case would beneficially deter, rather than excessively chill, future lawsuits").

Accounting for these various considerations, the Court finds that awarding attorneys' fees to Defendants is appropriate in this matter.

B.    ATTORNEYS' FEES CALCULATION

Having determined that an award of attorneys' fees is warranted in this case, the Court now considers the amount to be awarded based on the hourly rates and number of hours requested by Defendants.

1.    Hourly Rates

The Second Circuit has adopted the lodestar method for determining reasonable attorneys' fees, "which places

emphasis on a comparison of the rates charged by the prevailing party's counsel with rates of lawyers of similar skill and experience in the community." <u>Stevens v. Aeonian Press, Inc.</u>, No. 00 Civ. 6330, 2002 WL 31387224, at *4 (S.D.N.Y. Oct. 23, 2002). In this district, "[c]ourts awarding attorneys' fees in copyright cases have regularly found rates in the range of $400 to $750 an hour for partners to be reasonable." <u>BMaddox Enters. LLC v. Oskouie</u>, 2023 WL 1418049, at *4 (S.D.N.Y. Jan. 6, 2023) (collecting cases). As for associate rates, "courts in the Southern District have generally found hourly rates of $200 to $450 to be reasonable in copyright cases." <u>Latin Am. Music Co., Inc. v. Spanish Broad. System, Inc.</u>, 2020 WL 2848232, at *7 (S.D.N.Y. June 1, 2020) (collecting cases). Courts in this district "have generally found hourly rates of $150 to $200 to be reasonable for paralegals in copyright cases." <u>Id.</u>

Among the three law firms representing Defendants, the Davis Firm assumed the lead role in defending this action, representing nine of the eleven Defendants. (Davis Decl. ¶ 38.) The Davis Firm's hourly rates ranged between $375 to $450 for associates, $550 to $650 for counsel, and $750 for partners. (<u>Id.</u> ¶¶ 9-36.) Based on the approved hourly rates in this district for copyright cases, the Court finds that the Davis Firm's hourly rates are reasonable based on the

level of seniority and experience of their attorneys, as outlined in the Davis Declaration. (Id. ¶¶ 4-36.)

Pryor Cashman's hourly rates for its attorneys ranged between $595 to $710 for associates and $900 to $1,160 for partners, as well as between $200 to $295 for legal assistants. (See Zakarin Decl. ¶¶ 14-15; see also Zakarin Decl., Ex. A.) However, Pryor Cashman routinely discounted their rates between twenty to twenty-five percent due to its longstanding client-relationship with Universal. (Zakarin Decl. ¶ 15.) Even so, given that Pryor Cashman's hourly rates are higher than those typically awarded in this district for copyright actions and the Davis Firm took the lead in defending this case, the Court applies the Davis Firm's hourly rates to Pryor Cashman: $750 for partners Donald Zakarin and Ilene Farkas, $450 for then-senior associate Andrew Goldsmith, $375 for associate Brian Maida, and $100 for all paralegal billing.[4]

Quinn Emanuel's hourly rates for its attorneys ranged between $1,010 to $1,330 for counsel, $1,515 to $1,865 for partners and $355 to $490 for paralegals.[5] (Maslo Decl. at 5-

---

[4] The Zakarin Declaration does not include the background and experience of the paralegals. See, e.g., Capitol Recs., LLC v. ReDigi Inc., No. 12 Civ. 95, 2022 WL 3348385, at *5 (S.D.N.Y. Aug. 12, 2022) (reducing hourly rate for paralegals to $90 because the moving party failed to include the background and experience of each paralegal working on the case).

[5] The hourly rates for the Quinn Emanuel attorneys and paralegals vary throughout the billing summary, but the Maslo Declaration does not explain

8.) Defendants cite several cases in support of Quinn Emanuel's high hourly rates, but those cases involved complex matters outside of this district, and none of them entailed copyright claims. (See id. ¶ 18; Fee Mot. Mem. at 15-16.) The cited cases do not justify Quinn Emanuel's high hourly rates in this matter given that Quinn Emanuel was not lead counsel and the straightforward nature of this action. Thus, the Court applies the following hourly rates: $750 for partner Alex Spiro, $650 for counsel Paul Maslo, and $100 for all paralegal billing.[6]

2.   Number of Hours Expended

Defendants seek attorneys' fees for hours expended during three distinct periods of this litigation: (1) hours spent defending this action through the motion to dismiss, (2) hours spent defending the subsequent appeal, and (3) hours spent preparing this Fee Motion. The Court addresses the reasonableness of the requested hours in turn.

---

these rate changes. (See Maslo Decl. at 5-8.) For example, the billing rate of Paul Maslo varies between $1,010 and $1,065 – sometimes in the same week – throughout the billing records for 2021 and 2022. (Id. at 5-6.)

[6] The Maslo Declaration does not include the background and experience of the paralegals. See Capitol Recs., 2022 WL 3348385, at *5.

a. *Complaint Through Motion to Dismiss*[7]

Fee motions are generally subject to reductions. "It is common practice in this Circuit to reduce a fee award by an across-the-board percentage where a precise hour-for-hour reduction would be unwieldy or potentially inaccurate." Capitol Recs., Inc. v. MP3tunes, LLC, No. 07 Civ. 9931, 2015 WL 7271565, at *5 (S.D.N.Y. Nov. 12, 2015) (citation omitted); see id. ("Fee reductions up to [thirty percent] are common in this District."). "Courts in this district have applied percentage reductions of up to fifty percent to address overbilling issues, driven by case and billing specifics." White v. Apple Bank for Sav., 658 F. Supp. 3d 151, 159 (S.D.N.Y. 2023) (citation omitted). Courts may further reduce the requested fees based on equitable considerations, such as the overall reasonableness of the award and the relative financial strength of the parties. See Charles v. Seinfeld, No. 18 Civ. 1196, 2022 WL 889162, at *9 (S.D.N.Y. Mar. 25, 2022). The Court will first address billing deficiencies that warrant reductions for each law firm before turning to

---

[7] Although not specified by the parties, the Court considers the relevant period to be from May 6, 2021, when the Complaint was filed, to March 24, 2023, when this Court issued the Decision and Order granting Defendants' motion to dismiss. (See Dkt. No. 1; Decision & Order.) The Court declines to award fees and costs incurred before this action was filed. See Granite Music Corp. v. Ctr. St. Smoke House, Inc., 786 F. Supp. 2d 716, 739 (W.D.N.Y. 2011) (declining to award fees incurred in connection with pre-litigation matters in copyright action).

additional equitable considerations that broadly warrant
further reductions.

Between approximately May 2021 and March 2023, the Davis
Firm billed 677.8 hours, totaling $393,698.17 in attorneys'
fees. (Davis Decl. at 13-14.) The Davis Firm's
contemporaneous billing records generally document "the date,
the hours expended, and the nature of the work done" by each
attorney. (See Davis Decl., Ex. A.) Euro Pac. Cap., Inc.,
2018 WL 1229842, at *10. However, there are numerous billing
entries, such as "Emails from Brooke Tanner" or "Telephone
call with David Rettig," that are overly vague. (Davis Decl.,
Ex. A at 3, 17.) See Miroglio S.P.A. v. Conway Stores, Inc.,
629 F. Supp. 2d 307, 313 (S.D.N.Y. 2009) (entries such as
"letter to Dweck," "telephone call to Dweck," and "discussion
with Dweck" were overly vague). See also Spalluto v. Trump
Int'l Hotel & Tower, No. 04 Civ. 7497, 2008 WL 4525372, at *8
(S.D.N.Y. Oct. 2, 2008) (holding that "cursory descriptions,"
such as "prepare correspondence to co-counsel," and "prepare
letter to court" are overly vague and listing cases). There
are also numerous entries for "worked on memo of law" or
"working on memo of law," some of which span from 6.0 to 7.2
hours, (Davis Decl., Ex. A at 21), which are also too vague.
See Kirsch v. Fleet St., Ltd., 148 F.3d 149, 172-73 (2d Cir.
1998) (upholding twenty percent reduction in billed time for

vagueness and other deficiencies where many time entries merely read "work on motion," "letter to court," and "staff conference"). Based on these billing deficiencies, the Court initially reduces the fee award for the Davis Firm by twenty percent, totaling $314,958.54. See Margel v. E.G.L. Gem Lab Ltd., 2009 WL 302069, at *6 (S.D.N.Y. Feb. 6, 2009) ("Where time entries are justified in principle but vague in detail, courts frequently employ a reduction of [twenty percent] in order to eliminate waste that may be hidden in the entries.").

Between May 2021 and March 2023, Pryor Cashman billed a total of 40.9 hours, with 33.8 of these hours billed by two partners, Ilene Farkas and Donald Zakarin, and the remaining 7.1 hours billed by various paralegals. (See Zakarin Decl., Ex. A.) Based on the billing rates adopted above for Pryor Cashman, the appropriate fees amount to $26,060. (Id.) However, Pryor Cashman frequently engaged in block billing by combining several vague tasks into a single entry without including the attorney's time spent on each individual task. Some illustrative examples are 2.5 hours spent on "review claim, review, revise MTD; communs w/ J. Davis, client," (id. at 20), and 1.3 hours spent on "review SME comments, t/c w/Davis; conf w/DZ." (Id. at 27.) Although block billing is not forbidden, it does make it "difficult if not impossible for a court to determine the reasonableness of the time spent

on each of the individual services or tasks provided." E.S. v. Katonah-Lewisboro Sch. Dist., 796 F. Supp. 2d 421, 432 (S.D.N.Y. 2011). Given the block billing and numerous vague entries, the Court finds that an across-the-board reduction is appropriate here. The Court hereby initially reduces the fee award for Pryor Cashman by twenty percent, totaling $20,848. See Margel, 2009 WL 302069, at *6.

Between May 2021 and March 2023, Quinn Emanuel billed 22.2 hours between partner Alex Spiro, counsel Paul Maslo, and managing clerk Michael Alexander. (Maslo Decl. at 5-6.) Based on the rates adopted above for Quinn Emanuel, the fees amount to $14,295. A few of the entries are too vague, such as simply noting "Copyright" as the description, (id. at 5), or include block billing, such as 5.6 hours billed for "[r]eview draft of pre-motion letter; review all cases cited in letter; conduct follow-up research regarding arguments made in letter; review and analyze case law; email [Redacted]." (Id. at 6.) For the same reasons discussed above, the Court hereby initially reduces the fee award for Quinn Emanuel by twenty percent, totaling $11,436. See Margel, 2009 WL 302069, at *6.

The Court now turns to equitable considerations that warrant further reductions beyond the billing deficiencies identified above. Even with these twenty percent reductions,

21

the Court cannot overlook that defense counsel collectively billed 740.9 hours litigating the merits of this case, which never proceeded beyond a motion to dismiss. Given the straightforward nature of this action, the Court finds that 740.9 hours is unreasonably high for a case in this posture. To successfully defend this action, Defendants filed pre-motion letters in accordance with this Court's Individual Practices, followed by briefing on their joint motion to dismiss. Nor was defending this matter a complex task for defense counsel, all of which are sophisticated law firms with experienced attorneys in copyright actions, as outlined in their respective declarations. (See Davis Decl. ¶¶ 4-36; Zakarin Decl. ¶¶ 4-11; Maslo Decl. ¶¶ 4-8.) Courts in this district have found less exorbitant fee award requests to be unreasonable. For example, in Pyatt v. Raymond, plaintiff's copyright suit alleging infringement of a musical work, which named eighteen defendants, was clearly frivolous. 2012 WL 1668248, at *1. Nonetheless, the district court lowered defendants' requested fees, which totaled over $130,000 for approximately 200 hours between several law firms, because such high fees were unreasonable in a case that never proceeded beyond a motion to dismiss. Id. at *6-8. The Davis Firm, which represented one group of defendants in Pyatt, sought $52,910 in attorneys' fees but was ultimately awarded

$28,125. Id. at *8. (See also Pyatt v. Raymond, No. 10 Civ. 08764, Declaration of Jonathan D. Davis, Dkt. No. 101.)

Moreover, a district court may consider the relative financial positions of the parties in determining an attorneys' fees award. See Shangold v. Walt Disney Co., 275 F. App'x 72, 74 (2d Cir. 2008) ("Fee awards are at bottom an equitable matter, and courts should not hesitate to take the relative wealth of the parties into account." (citation omitted)); Sassower v. Field, 973 F.2d 75, 81 (2d Cir. 1992) ("[W]hen a court awards defendants attorney's fees, it must take into account the financial circumstances of the plaintiff."). The Court is mindful that "individuals who bring objectively unreasonable claims should not be given a 'free pass' just because they have limited financial resources." Muller v. Twentieth Century Fox Film Corp., No. 08 Civ. 02550, 2011 WL 3678712, at *4 (S.D.N.Y. Aug. 22, 2011). Nonetheless, the Court must assess "whether, in light of [Plaintiff's] ability to pay, a lesser sum assessed would . . . fulfill[] the statute's deterrence purpose without subjecting him to financial ruin." Faraci v. Hickey-Freeman Co., 607 F.2d 1025, 1029 (2d Cir. 1979).

There is a large financial disparity between the parties here. Although Nwosuocha has not submitted documentation regarding the financial status of Defendants, the Court may

23

take judicial notice of public disclosure documents and annual reports. See Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991). In light of public filings, Defendants - who are primarily mainstream music publishers and distributors - are financially successful. Cf. Seinfeld, 2022 WL 889162, at *9 (noting that defendants, which included comedian Jerry Seinfeld, Netflix, and Sony Pictures, "are well known and financially thriving" in considering the parties' financial resources). By contrast, Nwosuocha's gross monthly income reported in connection with this litigation is $6,667, totaling approximately $80,000 per year. (Nwosuocha Fin. Aff. at 2-3; see also Nwosuocha Letter at 1.) Nwosuocha's reported monthly expenses are approximately $5,700 and he has modest savings and assets. (Nwosuocha Fin. Aff. at 4-7.)

Defendants do not contest Nwosuocha's financial resources but insist that the financial status of the parties should not be considered. (Reply Mem. at 6.) However, awarding attorneys' fees totaling nearly $430,000 "would far exceed the Congressional goal of discouraging frivolous litigation." Cabell v. Sony Pictures Enters., Inc., No. 09 Civ. 1610, 2011 WL 92765, at *2 (S.D.N.Y. Jan. 7, 2011); Barclays Cap. Inc. v. Theflyonthewall.com, No. 06 Civ. 4908, 2010 WL 2640095, at *7 (S.D.N.Y. June 30, 2010) (in copyright action, reducing requested attorneys' fees from nearly $400,000 to $200,000

24

because "a full attorney's fee award [was] not required to fulfill the Copyright Act's purpose of deterring further infringement" given the economic disparities between the parties).

Thus, the Court finds that a far smaller fee award would adequately deter Nwosuocha, send a general deterrence message, and still meaningfully compensate Defendants. Accordingly, the Court further reduces the awards calculated above by an additional twenty-five percent. Therefore, the Court will award the Davis Firm $236,218.91, Pryor Cashman $15,636, and Quinn Emanuel $8,577 for their work litigating the merits of this case before the District Court. These reductions, while substantial, are "consistent with the practice of other courts in this circuit that have similarly reduced reasonable fees in light of limited financial resources." Seinfeld, 2022 WL 889162, at *7. See also TufAmerica Inc. v. Diamond, No. 12 Civ. 3529, 2018 WL 401510, at *4 (S.D.N.Y. Jan. 12, 2018) (in copyright action, reducing requested attorneys' fees by approximately forty-seven percent for an award of $450,000 based on the economic disparities between the parties); Tuff 'N' Rumble Mgmt., Inc. v. Profile Recs., Inc, No. 95 Civ. 0246, 1997 WL 470114, at *1 (S.D.N.Y. Aug. 15, 1997) (in copyright action, awarding

fifty percent of defendants' fee application "in recognition of plaintiff's claimed financial instability").

        b.   *Appeal*

Defendants argue that this Court should award attorneys' fees and costs incurred due to Nwosuocha's unsuccessful appeal. (Fee Mot. Mem. at 2-3.) Pursuant to Section 505, the district court may award attorneys' fees "for services rendered on appeal as well as at the trial level." Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd., 996 F.2d 1366, 1383 (2d Cir. 1993) (citation omitted). "While appellate fees may be addressed by a court of appeals, they may also be awarded by the district court in the first instance on remand." Capitol Recs., LLC v. ReDigi Inc., No. 12 Civ. 95, 2022 WL 1046463, at *4 (S.D.N.Y. Apr. 7, 2022) (citation omitted). "Awarding appellate fees requires a distinct inquiry from awarding district court fees, and courts may award one while declining to award the other." Id.

Defendants provide few details regarding the appeal, but based on the billing records, defense counsel collectively billed more than 450 hours on appeal. (Davis Decl. at 13-14; Zakarin Decl., Ex. A at 39-88; Maslo Decl. at 6-7.) Given that the moving party "has the burden of showing that hours expended were reasonable," Latin Am. Music Co., Inc., 2020 WL 2848232, at *7, Defendants have failed to carry their burden

26

here. Defendants do not justify the reasonableness of the hours spent defending this case on appeal, except for describing the appeal as "meritless" and "groundless." (Fee Mot. Mem. at 11; Reply Mem. at 2.) Although "the district court does not play the role of an uninformed arbiter" and "may look to its own familiarity with the case," Tlacoapa v. Carregal, 386 F. Supp. 2d 362, 371 (S.D.N.Y. 2005), this Court did not preside over the appeal and will not fill in the gaps of Defendants' deficient request.

Thus, the Court denies without prejudice Defendants' request for fees and costs associated with the Nwosuocha's unsuccessful appeal. However, Defendants may present the issue of fees and costs incurred on appeal to the Second Circuit. See, e.g., Pannonia Farms, Inc. v. USA Cable, No. 03 Civ. 7841, 2006 WL 2872566, at *2 (S.D.N.Y. Oct. 5, 2006) (declining to rule on defendant's application for fees and costs on appeal pursuant to Section 505, reserving those issues for the Court of Appeals).

c. *Section 505 Fee Motion*

Time spent preparing an attorneys' fee application is compensable, colloquially known as "fees-on-fees," and may be awarded at the district court's discretion. See Patsy's Brand, Inc. v. I.O.B. Realty, Inc., No. 99 Civ. 10175, 2022 WL 1026577, at *4 (S.D.N.Y. Apr. 6, 2022). However, such hours

must be reasonable. <u>See</u> <u>id.</u> "Courts in this district typically find that motions for attorneys' fees should not exceed 30 hours," even in complex cases. <u>Seinfeld</u>, 2022 WL 889162, at *6.

   To prepare this Fee Motion, the Davis Firm billed 69.4 hours and seeks $51,335.16 in fees and costs, Pryor Cashman billed 19.6 hours and seeks $12,557.59 in fees and costs, and Quinn Emanuel billed 25.2 hours and seeks $29,805.30 in fees in costs, totaling $93,698.05 and 114.2 hours among the three law firms. (<u>See</u> Davis Reply Decl. at 3.) Given the nature of this case, the Fee Motion is straightforward and does not grapple with any complex issues of law or fact. As such, the Court finds that the requested fees and costs are unreasonably high.

   The Supreme Court has admonished that a "request for attorney's fees should not result in a second major litigation." <u>Hensley</u>, 461 U.S. at 437. However, Quinn Emanuel billed more hours preparing this Fee Motion (25.2 hours) than it did litigating the underlying case before this Court (22.2 hours). <u>See</u> <u>Cooper v. Sunshine Recoveries</u>, No. 00 Civ. 8898, 2001 WL 740765, at *4 (S.D.N.Y. June 27, 2001) ("The hours devoted to litigating fees should not dwarf the time expended on the merits."). Although less egregious, Pryor Cashman spent nearly half as much time on this Motion (19.6 hours) as

it spent on the underlying litigation (40.9 hours). Nor are the 69.4 hours billed by the Davis Firm reasonable, which is more than double the 30-hour benchmark for even complex cases in this district. See Seinfeld, 2022 WL 889162, at *6. Cf. Hughes v. Benjamin, No. 17 Civ. 6493, 2020 WL 4500181, at *6 (S.D.N.Y. Aug. 5, 2020) (finding that the 14 hours billed in connection with the motion for attorneys' fees was reasonable for a copyright action dismissed at the motion to dismiss stage).

Although there is no standard percentage for fees-on-fees awards, "courts within this Circuit have awarded fee application awards in the range of [eight] to [twenty-four] percent of the total time claimed." See Davis v. City of New Rochelle, N.Y., 156 F.R.D. 549, 561 (S.D.N.Y. 1994). See also Baird v. Boies, Schiller & Flexner LLP, 219 F. Supp. 2d 510, 525 (S.D.N.Y. 2002) (awarding ten percent of total attorneys' fees awarded for fee application). In light of the considerations above, the Court will award ten percent of the total attorneys' fees awarded to the Davis Firm Defendants, Universal, and Roc Nation in the underlying litigation as fees for preparing this Fee Motion. Thus, the Davis Firm Defendants shall be awarded $23,621.89, Universal shall be awarded $1,563.60, and Roc Nation shall be awarded $857.70 in connection with preparing this Fee Motion.

C.    COSTS CALCULATION

Under Section 505, courts also have discretion to award costs to the prevailing party. 17 U.S.C. § 505. "An award of costs 'normally include[s] those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients.'" Brunswick Recs. Corp., 2023 WL 8703705, at *7 (quoting Fisher v. SD Prot. Inc., 948 F.3d 593, 600 (2d Cir. 2020)). A party "seeking to recover cost[s] is required to submit bills or receipts of claimed expenses." Tabak v. Lifedaily, LLC, No. 21 Civ. 04291, 2021 WL 5235203, at *6 (S.D.N.Y. Nov. 9, 2021). Because the Court has already declined to award the fees and costs incurred on appeal, the Court addresses only the costs incurred by Defendants litigating the merits before the District Court and preparing this Fee Motion.

Upon review of the billing records, nearly all of the costs incurred by defense counsel were for electronic legal research on Westlaw.[8] (See Davis Decl., Ex. A; Zakarin Decl.,

---

[8] While litigating the merits before the District Court, defense counsel incurred the following costs: the Davis Firm incurred only Westlaw costs, (see Davis Decl., Ex. A at 11, 14, 22, 28, 34, 38, 43, 62, 70, 80, 85), Pryor Cashman incurred Westlaw costs and $10.30 in docket expenses, (see Zakarin Decl., Ex. A at 8, 14, 21, 30), and Quinn Emanuel did not specify any incurred costs. Regarding the $10.30 on docket expenses, Pryor Cashman "did not file any supporting documentation for these costs and the Court finds no support on the docket" and thus declines to award the $10.30 in docket expenses. See Gold Medal Produce, Inc. v. KNJ Trading Inc., No. 19 Civ. 3023, 2021 WL 4555174, at *2 (S.D.N.Y. Oct. 5, 2021).

Ex. A.) However, "the cost of the computer service used in the research is no more reimbursable than the cost of the West's Keynote Digests and the volumes of the Federal Report and the Federal Supplement" that lawyers generally used (and many still use) to find authorities and research issues of law. John Wiley & Sons, Inc. v. Book Dog Books, LLC, 327 F. Supp. 3d 606, 648 (S.D.N.Y. 2018) (declining to award costs for Lexis fees under Section 505); Seinfeld, 2022 WL 889162, at *8 ("The Court will not award costs for electronic research fees, which are already accounted in the attorneys' hourly rates and research time."). See also U.S. for Use & Benefit of Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp., 95 F.3d 153, 173 (2d Cir. 1996) ("We agree that computer research is merely a substitute for an attorney's time that is compensable under an application for attorneys' fees and is not a separately taxable cost."). The Court has not identified, nor have Defendants pointed to, records of additional costs incurred defending this matter before the District Court.

In connection with the Fee Motion, the Davis Firm incurred $305.01 for "courtesy copy costs for motion papers" and "cost of FedEx of courtesy copy to courthouse," (Davis Reply Decl. at 5), but provides no explanation as to "whether those costs were for printing, copying, mailing, [or]

overnighting" these papers to the Court and presumably
Nwosuocha, nor did the Davis Firm provide any receipts. <u>Ge
Chun Wen v. Hair Party 24 Hours Inc.</u>, No. 15 Civ. 10186, 2021
WL 3375615, at *24 (S.D.N.Y. May 17, 2021) (reducing requested
litigation costs by fifty percent for lack of specificity and
documentation). The Court reduces the costs associated with
courtesy copies to $150. <u>See</u> <u>Seinfeld</u>, 2022 WL 889162, at *8
(reducing requested costs for copying, postage, and messenger
costs by fifty percent). Besides Westlaw charges, the Court
has not identified, nor has Universal pointed to, any costs
incurred by Pryor Cashman in connection with the Fee Motion.
(<u>See</u> Zakarin Reply Decl.) Similarly, it does not appear that
Quinn Emanuel incurred any costs in preparing this Fee Motion.
(<u>See</u> Maslo Reply Decl.) Thus, the Court awards $150 to the
Davis Firm Defendants for the costs incurred in connection
with preparing this Fee Motion.

## IV.  <u>ORDER</u>

For the reasons stated above, it is hereby

**ORDERED** that the motion for attorneys' fees and costs of
defendants Donald McKinley Glover, II ("Glover"), Jeffrey
Lamar Williams ("Williams"), Ludwig Emil Tomas Göransson
("Göransson"), Kobalt Music Publishing America, Inc. d/b/a/
Songs of Kobalt Music Publishing ("Kobalt Music"), Sony Music

Entertainment ("Sony Music"), Young Stoner Life Publishing, LLC ("YSL"), 300 Entertainment LLC f/k/a Theory Entertainment LLC d/b/a 300 Entertainment ("300 Entertainment"), Atlantic Recording Corporation ("Atlantic"), Roc Nation Publishing d/b/a Songs of Roc Nation ("Roc Nation"), Songs of Universal, Inc. ("Universal"), and Warner-Tamerlane Publishing Corp. ("Warner-Tamerlane") (collectively, "Defendants"), is GRANTED IN PART and DENIED IN PART; it is further

**ORDERED** that Defendants Glover, Williams, Göransson, Kobalt Music, Warner-Tamerlane, Sony Music, YSL, 300 Entertainment, and Atlantic, represented by Jonathan D. Davis, P.C. (the "Davis Firm"), shall be awarded $259,840.80 in fees and $150 in costs; it is further

**ORDERED** that Defendant Universal, represented by Pryor Cashman LLP ("Pryor Cashman"), shall be awarded $17,199.60 in fees; it is further

**ORDERED** that Defendant Roc Nation, represented by Quinn Emanuel Urquhart & Sullivan LLP ("Quinn Emanuel"), shall be awarded $9,434.70 in fees; and it is further

**ORDERED** that Defendants' request for attorneys' fees and costs incurred on appeal is denied without prejudice, but Defendants may request an award of those fees and costs from the United States Court of Appeals for the Second Circuit.

**SO ORDERED.**

Dated:      20 February 2025
            New York, New York

                                        _____
                                        Victor Marrero
                                        U.S.D.J.